LEOPOLD NORWAYSZ

*v.*

THE THURINGIA INSURANCE COMPANY.

*Opinion filed October 26, 1903.*

1. APPEALS AND ERRORS—*presumption where the Appellate Court reverses without remanding.* If the Appellate Court reverses a judgment at law without remanding the cause or making a finding of facts, it is presumed the reversal was upon the ground the evidence did not tend to prove a cause of action, and in such case the Supreme Court has jurisdiction to determine that question.

2. INSURANCE—*if terms of a contract are unambiguous neither party can be favored.* If there is no ambiguity in the terms of an insurance contract neither party can be favored in its construction, and if the stipulations are such as the parties might lawfully make, it is the duty of the court to enforce them.

3. SAME—*when prohibition against use of gasoline is not dependent on increased hazard.* A clause in a fire policy providing for the avoiding of the policy in case gasoline is kept or used is not dependent upon a preceding clause prohibiting an increase of the hazard, where the clauses are distinct and separated from each other by a semi-colon.

4. SAME—*violation of a restriction as to use of gasoline avoids policy.* Violation of a provision in a fire policy permitting the use of gasoline for a stove on condition that no gasoline shall be kept in the

building other than in the reservoir of the stove avoids the policy, and it is not incumbent on the insurer to show that such violation contributed to the loss.

5. SAME—*violation of a policy by tenant is a violation by a landlord.* Violation of the terms of a fire policy by a tenant of the insured without his knowledge is a violation by the insured.

*Thuringia Ins. Co.* v. *Norwaysz,* 104 Ill. App. 390, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

WILLIAM A. DOYLE, for appellant.

LACKNER, BUTZ & MILLER, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This was an action of assumpsit upon a policy of insurance for $1900, issued by the Thuringia Fire Insurance Company, appellee, on December 21, 1899, insuring the frame buildings of Leopold Norwaysz, appellant, against a loss by fire for the period of three years from the date of the policy. The premises insured were located at 4346 Honore street, in the city of Chicago, and were destroyed by fire June 21, 1900. There was a verdict and judgment in favor of appellant in the circuit court of Cook county for $1768.64. This judgment was reversed by the Appellate Court on the ground that the trial court erred in refusing to direct a verdict for the defendant at the close of all the evidence.

The errors relied upon by appellant for a reversal of the judgment of the Appellate Court are the following: (1) The Appellate Court erred in not affirming the judgment of the circuit court, having found the facts in issue the same as the trial court; (2) the Appellate Court erred in finding that the circuit court erred in the application of law to the undisputed facts in the case; (3) the Appellate Court erred in its construction of the policy of in-

surance; (6) the Appellate Court erred in not remanding this case to the circuit court, having reversed the judgment of the said circuit court.

The sixth assignment presents the question whether the record shows a case for review in this court. The error assigned is, that the Appellate Court erred in not remanding the case to the circuit court, having reversed the judgment of the said circuit court. The judgment of the Appellate Court does not recite a finding of fact. Although reversing the court below, it does not remand the cause for another trial. In such a case it will be inferred that the Appellate Court found the facts the same as the trial court. It will also be presumed from the fact that the case was not remanded that the error committed was not one arising during the progress of the trial, such as error in admitting or excluding evidence or giving or refusing general instructions. Therefore, having found the facts the same and not having reversed the judgment for error arising during the progress of the trial, the Appellate Court must be presumed to have held that the evidence in the record did not prove or tend to prove a cause of action. (*Brant* v. *Lill*, 96 Ill. 608; *Post* v. *Union Nat. Bank*, 159 id. 421; *Busenbark* v. *Saul*, 184 id. 343; *Supple* v. *Agnew*, 191 id. 439.) This court has, therefore, jurisdiction in this case for the purpose of ascertaining whether there was evidence tending to show a right of action in the plaintiff.

The policy in question contained the following clause: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if * * * or if the hazard be increased by any means within the control or knowledge of the insured; * * * or if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used or allowed on the above premises, benzine, benzole, dynamite, ether, fireworks, gasoline, greek fire, gun-powder exceeding twenty-five pounds in quantity, naphtha, nitro-glycerine

or other explosives, phosphorus, or petroleum or any of its products of greater inflammability than kerosene oil of the United States standard." Attached to the policy was a "rider" which contained a "vapor stove and gasoline permit," in the following words: "Permission is hereby given for the use of gasoline stoves, the reservoir to be filled by daylight only and when the stove is not in use. Warranted by the assured that no artificial light be permitted in the room when the reservoir is being filled, and no gasoline, except that contained in said reservoir, shall be kept within the building, and not more than five gallons, to be in a tight and entirely closed metallic can, free from leak, on the premises adjacent thereto." Beneath this the word "caution," printed in bold-faced type, drew the attention to the following: "The danger from gasoline stoves is not so much in themselves as in having the material about. At ordinary temperature gasoline continually gives off inflammable vapor, and a light some distance from the material will ignite it through the medium of this vapor. It is said that one pint of gasoline will impregnate two hundred cubic feet of air and make it explosive, and it depends upon the proportion of air and vapor whether it becomes a burning gas or destructive explosive. Beware of any leaks in cans, and never forget how dangerous a material you are handling." It is because of the violation of the prohibitive clause in this "rider" that the defendant below moved the court, at the close of the evidence, to direct a verdict for the defendant.

The evidence of this violation is contained in the testimony of Mrs. Anna Glatky, who was introduced by the appellant to give evidence in rebuttal. Her material testimony was as follows, on direct examination:

Q. "Where did you live about June 21, 1900?

A. "On Honore street, in that house that burned down.

Q. "Who did you rent the place from?

A. "Leopold Norwaysz.

204—22

Q. "Were you living there at the time of the fire?

A. "We rented; we moved there the tenth and the fire was on the twenty-first."

Re-direct examination:

Q. "When you moved into this place, on or about the tenth, what did you use for lighting purposes in this house,—coal oil or gas?

A. "We used kerosene. We had two stoves in there; one we used coal in and the other we used oil.

Q. "Did you buy, or your husband, any kerosene at the time, or shortly after you moved in there, for household use?

A. "I had a gallon of kerosene and also a gallon of gasoline."

Re-cross examination:

Q. "When did you get the gallon of kerosene and when did you get the gallon of gasoline?

A. "I don't remember what date; I know I had it.

Q. "How long after you moved in there?

A. "About the second or third day; but in the summer time we used very little.

Q. "What did you use the gasoline for?

A. "Stove cooking during summer.

Q. "You had a gasoline stove?

A. "Yes, sir; we did.

Q. "Where did you keep that gallon of gasoline?

A. "Why, I had the stove filled and the balance in the pantry.

Q. "How much was in the can in the pantry?

A. "Almost full—not very much taken out.

Q. "Where was the pantry?

A. "In the kitchen.

Q. "How many rooms did you occupy?

A. "We had a front room, kitchen and two bed-rooms.

Q. "Those rooms you speak of were in the front, down stairs of the house, 4346 Honore street? Is that right?

A. "Yes, sir.

Q. "Did that gallon of gasoline remain in that pantry or that kitchen up to the time of the fire?

A. "Yes, sir; it was there.

Q. "Almost full was it—the can?

A. "Yes, sir.

Q. "At the time of the fire this gallon can was almost full, was it?

A. "Yes, sir; a lamp filled with oil.

Q. "The lamps were filled? I say the gasoline can; that was almost full at the time of the fire?

A. "Pretty nearly full; yes, sir; we used some for the stoves."

There was no other evidence introduced to contradict the testimony of this witness and it must be taken as entirely undisputed. The only question, therefore, necessary to be considered by this court is whether, as a matter of law, the testimony of Mrs. Glatky shows facts sufficient to constitute such violation of the terms of the policy as will relieve the insurer from liability thereon.

Counsel for appellant cites numerous cases to the point that where there is a question whether or not the hazard was increased, it is a fact to be determined by the jury. The cases undoubtedly support the doctrine, but neither the cases nor the doctrine have any application to the case under consideration. To be sure, there was a clause in the policy which provided, "or if the hazard be increased by any means within control or knowledge of the insured," but it is entirely separate from the clause which prohibits the keeping or use of gasoline. The paragraph begins, "this entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void, if," and then follows a series of co-ordinate clauses, each punctuated by a semi-colon. Among these clauses are the two in question: the one prohibiting an increase of risk by any means within the knowledge or control of the insured; the other prohib-

iting the keeping or using of gasoline on the premises. They are entirely disassociated in fact, and there is no rule of construction that would require or suggest their connection.

It is suggested that a rule of construction applicable to this case is, that all parts of the contract are to be considered together. That is unquestionably a valuable rule, but it must not be applied to the extent of reading two separate clauses as one just because one can be attached to the other without destroying the meaning of either. The position of counsel for appellant is this: One clause prohibits the use of gasoline; another clause prevents the increase of hazard by any means, therefore the prohibition of the use of gasoline means only such use as a jury would decide to be an increase in the hazard. Such a construction is so extravagant that it would be useless to cite authorities for rejecting it, were it not that the appellant has based the greater part of his argument upon the assumption that the two clauses must be read together.

In *Newport Imp. Co.* v. *Home Ins. Co.* 163 N. Y. 237, (57 N. E. Rep. 475,) the policy, very similar to the one under consideration, read: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void, * * * or if the hazard be increased by any means within the knowledge or control of the insured, or if mechanics be employed in building, altering or repairing the within described premises for more than fifteen days at any one time." The court, in construing this clause, said: "This clause in the policy contains a large number of provisions, separated by semi-colons, each of which renders it void as therein provided. * * * It is clear that the acts to which reference is about to be made [certain alterations] fall within the second provision quoted above, to the effect, 'or if mechanics be employed in building, altering or repairing the within described premises for more than fifteen days at any one

time.' The question of increase of hazard is not neces-
sarily involved. If mechanics are employed in building,
altering or repairing the premises for more than fifteen
days at any one time, and an agreement or consent is
not endorsed on the policy permitting such work, the
contract of insurance is void." The court affirmed the
judgment of the court below holding that it was proper
to have dismissed the suit on its merits.

The Supreme Court of the United States construed
this clause in *Imperial Fire Ins. Co.* v. *County of Coos*, 151
U. S. 451. The clause in this case was substantially the
same as in the case just cited. The court said in con-
struing: "If the last stipulation had been so plain as to
require the element of an increased risk to be incorpo-
rated into the condition that 'if mechanics are employed
in building, altering or repairing the premises named
herein,' etc., then there would have been presented a
question of fact for the jury whether such alterations
and repairs constituted an increase of risk. But this con-
dition being wholly independent of any increase of risk,
its violation without the consent of the insurer or waiver
of the breach annulled the policy." Again: "The condi-
tion which was violated did not in any way depend upon
the fact that it increased the risk, but by the express
terms of the contract was made to avoid the policy if
the condition was not observed. The instruction of the
court gave no validity or effect to the condition and its
breach, but made it depend upon the question whether
the acts done in violation of it in fact increased the risk
and whether such increased risk was operative at the
date of the fire."

These long quotations have been given because they
are directly in point on the question of construction, and
because, taken together with the reason therefor, they
effectually dispose of the appellant's earnest contention
that the provision regulating the use of gasoline must
be taken to be modified by the clause prohibiting an in-

crease of hazard. It is contended that "surely that this part of the policy [prohibiting the increase of hazard] must have some meaning." It undoubtedly does, and the meaning does not seem to be concealed. If, for instance, the insured should do some act not specifically prohibited by the terms of the policy but which was of such a nature as to increase the hazard and multiply the possibilities of fire, then the clause in question would apply, and the jury would properly be looked to in a determination of the question whether such act was an increase of the hazard.

The permission given to the insured to use gasoline does not relieve him from the effect of the violation of the one important restriction on such use. The insurance company was not compelled to give its permission to the appellant to use gasoline. It was a voluntary act for the benefit of the insured and there was no advantage to the insurance company gained thereby. Contracts of insurance are to be construed like other contracts. If ambiguous terms are used, the meaning more favorable to the insured will be adopted, not because he is the sufferer in a recent loss or because of a disparity in the financial condition of the two parties, but because the words are those of the insurer and the ambiguity is chargeable to it. Where, however, there is no ambiguity in the terms, neither party is to be favored. If the stipulation is one that the parties could lawfully make, and, having been made, is not actually or inferentially waived, it is the function of the court to enforce its observance as the parties made it, and not to make a new agreement for the purpose of mollifying the hardship that the rigorous and inflexible terms occasion. In the case at bar there was permission given to use a gasoline stove, and on the permit were the words, "warranted by the assured that no artificial lights be permitted in the room when the reservoir is being filled, and no gasoline except that contained in said reservoir shall be kept

within the building." The undisputed evidence is that gasoline was kept by the tenant of the insured in the building.

Counsel for appellant contends that there could have been only a small quantity of gasoline, because the witness swore that she had the stove filled and had the balance in the pantry. There is no possible way for this court to determine how large the reservoir attached to the stove was, except from the testimony of this witness. She swears, further along in her testimony, that the can in the pantry was "almost full," and again "pretty full; we used some for the stove." From this it must be concluded that the reservoir was quite small; at any rate, this witness manifested a clear desire to impress the fact that there was a considerable quantity of oil kept in the pantry. She moved into the house on the tenth of June. When asked when it was that she purchased the gasoline, she answered, "About the second or third day after we moved in there, but we used very little in the summer." This explanation was evidently for the purpose of rebutting the natural presumption that if purchased on the twelfth or thirteenth of June there would be very little gasoline remaining at the date of the fire, eight or nine days later. There can be no doubt that the undisputed testimony of this witness shows that there was, in fact, a considerable quantity of gasoline kept in the pantry.

Counsel for appellant desires that this court should take notice of the common knowledge that a reservoir upon a gasoline stove contains one gallon, and that if witness had filled the stove there would be practically none left in the can. If a gasoline can were kept in the pantry with no oil in it, or such an inconsiderable quantity as might adhere to the inside of the can, there would, of course, be no violation of the clause. But this witness has sworn, and reiterated, that the can was nearly full. If this court were allowed to draw presumptions from

common knowledge, we might presume that if the can were kept in the pantry (as the witness testified) it is probable that at some time it was kept there with the entire gallon of oil in it. Of course, such presumption is not proper nor is it necessary under the testimony given, but it is fully as proper as the presumption urged by the appellant that the reservoir on the gasoline stove contained a gallon, and therefore there was little, if any, gasoline kept in the pantry.

Being fully convinced that there was a material breach of the warranty by the insured, the policy of insurance must be held to have been avoided unless some other rule prevents such avoidance.

It is contended that the breach of the warranty was the act of the tenant, for which the insured was not responsible. It has been shown that this clause has no possible connection with the provision elsewhere in the policy that the hazard shall not be increased by any means within the knowledge or control of the insured. Therefore, if the insured can rely upon his ignorance of the breach by the tenant as an absolution from the result of it, it must be because of a rule of law applicable, and not because the policy provides any such thing. Upon this question the following cases are decisive: *Diehl* v. *Adams County Mutual Ins. Co.* 58 Pa. St. 443; 98 Am. Dec. 302; *Wetherell* v. *City Fire Ins. Co.* 16 Gray, 276; *German Fire Ins. Co.* v. *Shawnee County,* 54 Kan. 732; 45 Am. St. Rep. 307; *Insurance Co.* v. *Gunther,* 116 U. S. 113, and 134 id. 110; *Kelley* v. *Worcester Co.* 97 Mass. 284; *Hall* v. *People's Ins. Co.* 6 Gray, 185; *Concordia Ins. Co.* v. *Johnson,* 4 Kan. App. 7; *Long* v. *Beeber,* 106 Pa. St. 466; 51 Am. St. Rep. 532; *Badger* v. *Platts,* 68 N. H. 222; 73 Am. St. Rep. 572. Each one of these cases holds pointedly that an insured party can not be relieved from the effect of the violation of prohibitive clauses by showing that the violation was by his tenant, without his knowledge or control. A violation of the provisions by anyone who is permitted by the

insured to occupy the premises is a violation by the insured himself. In *Insurance Co.* v. *Christiensen*, 29 Neb. 572, (26 Am. St. Rep. 407,) a contrary doctrine is announced, but it is clearly without the support of authority.

On the trial below it was not proved that the fire was in any way due to the presence of the gasoline in the building, nor can the origin of the fire be determined from the evidence. The point is urged, that since the violation of the prohibitive clause was in no way shown to have occasioned the fire, it was a question for the jury to determine whether, as a matter of fact, the hazard was thereby increased. This contention is not supported by reason or authority. The assured warranted that no gasoline, except that contained in the reservoir upon the stove, should be kept in the building. If he had refused to warrant this, the insurance company would doubtless have withheld the permission to use gasoline at all. To hold now that unless the insurance company can show that the breach of the warranty contributed to the fire it must be held to a strict liability would be to confound all distinctions of contractual liability. The insurer unquestionably considered the presence of gasoline in the building as an increase of risk. In one sentence permission is given to use gasoline in the stove, but in the next sentence it is provided that no gasoline except that in the reservoir shall be kept in the building. Then, beneath this, the word "caution," in bold-face type, draws the attention to the dangerous character of gasoline. This caution begins with the sentence, "the danger from gasoline stoves is not so much in themselves as in having the material about." That is the very thing it is wished to provide against. If we were to consider this "rider" as a contract, there is on one side a permission to use a gasoline stove; on the other side, standing as a consideration for the permission, a warranty that in using the stove no gasoline other than that in the reservoir shall be kept in the building. The warranty was inserted for

the benefit of the insurer. It was the material and essential restriction on the use of gasoline. A substantial violation has been proved, and it is absolutely beside the point to inquire whether or not the breach actually contributed to the loss. The following cases support these views: *Hill* v. *Middlesex Ins. Co.* 174 Mass. 542; 55 N. E. Rep. 319; *Newport Imp. Co.* v. *Home Ins. Co. supra; Diehl* v. *Adams County Mutual Ins. Co. supra; Turnbull* v. *Home Fire Ins. Co.* 83 Md. 312; *Kyte* v. *Assurance Co.* 149 Mass. 116; 21 N. E. Rep. 361; 3 L. R. A. 508; *Pennsylvania Ins. Co.* v. *Faries*, 13 Tex. Civ. App. 111; *Thomas* v. *Fame Ins. Co.* 108 Ill. 91; *Imperial Fire Ins. Co.* v. *County of Coos, supra.*

There are two general classes of cases in which it has been held with considerable uniformity that a breach of a prohibitive clause in a policy such as this will not operate to relieve the insurer from liability thereon. One, where the policy of insurance, being on a stock of goods used in business, contains clauses forbidding the keeping of certain materials which are customarily a part of such a stock of goods; (*Reaper City Ins. Co.* v. *Jones*, 62 Ill. 458;) the other, where the breach consists in keeping small quantities of the forbidden article for cleaning clothes or machinery, or like purposes. The reason for the holding is, that in the first class, by insuring the stock of goods in which the forbidden articles were a usual part, the insurer impliedly waives the restrictive clause referring to it. (See note to *Lancaster Fire Ins. Co.* v. *Lenheim*, 89 Pa. St. 497, in 33 Am. Rep. 781.) In the second class, the bringing of the small quantities on the premises is held to be such a trifling departure as will not amount to a breach. Of course, the case in question falls in neither of these classes. Having gasoline in the building for cooking purposes when keeping it there, other than in the reservoir, was forbidden, was a substantial and serious breach.

We fail to find in the cases cited, or elsewhere, any authority to warrant us in depriving the appellee of the

right to a strict observance of the restrictive clause in the policy, and we think that the peremptory instruction should have been given.

The judgment of the Appellate Court is accordingly affirmed.                                    *Judgment affirmed.*