EDWARDS *et al.* FARMERS MUTUAL INSURANCE AS-
SOCIATION OF GEORGIA.

1. Where a by-law of a mutual co-operative insurance company, which became a part of a policy of insurance issued by it, provided that "liabilities cease at once on dwellings in the Association, in which seed-cotton or loose lint cotton is stored," a violation of such provision avoided the policy, although the storing of the seed-cotton was done by a tenant to whom the insured had rented or leased the premises and delivered control, and without the knowledge of the insured.

2. Notice to the company that the property was rented to a tenant, and its continuing to receive payment of premiums or assessments from the owner, did not operate as a waiver of the terms of the policy prohibiting the storing of seed-cotton in the dwelling-house.

Submitted April 18,—Decided May 16, 1907.

Action on insurance policy.　Before Judge Brand.　Walton superior court.　April 4, 1906.

Edwards et al. brought suit against the Farmers Mutual Insurance Association of Georgia, on an insurance policy.　The case was submitted to the presiding judge without a jury, upon an agreed statement of facts, containing the following: "Before the execution of the contract, defendant adopted a by-law as follows: 'Liabilities cease at once on dwellings in the Association, in which seed-cotton or loose lint cotton is stored.' This by-law was adopted April 4, 1899.　Paragraph 9 of the insurance contract provides that 'The Association and the insured shall be governed by the by-laws of the Association.' About two weeks before the fire, the house was vacated by one McElhannan and his family, who were tenants of W. P. Fambrough.　Thereafter said Fambrough, not having sufficient room at a public gin near by, temporarily placed in said house enough seed-cotton to make about two bales, intending to remove said cotton on the next morning after the fire occurred.　Said cotton had been placed in the house at intervals, a load at a time, covering a period of not more than two weeks and not less than one week.　On the night before such intended removal, the house, while the seed-cotton was stored therein and while unoccupied by any person, was destroyed by fire.　Plaintiffs did not tell said Fambrough, their tenant, he could or could not place seed-cotton in said house, or that the house was insured.　At the time of the fire and previous thereto, W. P. Fambrough was the tenant of the plaintiffs, under a written contract, made September 21, 1903,

23

and was occupying and using for farming purposes the premises on which the house was located. Under such contract said Fambrough was to pay to plaintiffs annually for three years a stipulated amount of cotton as standing rent, the plaintiffs, under such contract, not reserving or having any direction, control, or possession of the premises or any part of the same, or any authority to use, control, or restrict the use of the house in question. Plaintiffs received, before the loss occurred, several notices of assessments, each containing the following words: 'N.B. The Association will not be responsible for dwellings or tenant houses burned with seed-cotton in them.' Plaintiffs did not at the time of making said rent contract with said Fambrough, or afterwards, restrict the use of the house in any manner by said Fambrough; nor did they inform said Fambrough that it would be a violation of a by-law of the association in which the property was insured to place seed-cotton in the house; nor did plaintiffs inform defendant that they had entered into a rent or lease contract with said Fambrough for a term of years, under the terms of which plaintiffs had lost control and direction of the use of the house, for such term of years.

"Plaintiffs continued to pay their assessments after the rent contract was made, and they were accepted by the defendant and not returned. When the policy was issued, the premises were held by one S. C. Cooper as tenant, under a written contract for five years, by the terms of which contract plaintiffs had lost control and direction of the use of the house. Defendant then knew that Cooper was in possession of the premises under some contract with plaintiffs, and J. C. Phillips, the field soliciting agent of the defendant, knew that both Cooper and Fambrough were tenants of the plaintiffs under a contract for standing rent. While said Cooper was such tenant, the said Phillips warned him not to put seed-cotton in the dwelling, and while said Fambrough was such tenant said Phillips, in passing House No. 1, in which Fambrough and his family were residing, saw certain baskets of seed-cotton in the veranda thereof, called the said Fambrough, and told him that it was a violation of the laws of the insurance association in which the house was insured to put seed-cotton in it. This was in spring of 1904. This was the first knowledge that said Fambrough had that the house he lived in was insured. Defendant knew that

Fambrough was also in possession of the premises under some contract with plaintiffs, and with this knowledge continued to collect of plaintiffs (and never returned or offered to return) the assessments on the house, in the same manner as such assessments were levied and collected previous to the contract with Fambrough and during the tenancy of Cooper. Defendant, when the premises were insured and the policy written, and always thereafter, knew that the plaintiffs did not follow the occupation of farming, and that the use and occupation of the premises were and would be thereafter delegated to others for farming purposes, and defendant did not make any restrictions except what was contained in the policy and the by-laws of the association. Fambrough had on the premises another and usually sufficient place for storing seed-cotton. Defendant knew nothing of the terms of the contract of plaintiffs with said Cooper or said Fambrough, which is now shown to have been in writing, and made no inquiry as to such terms. They do admit that J. C. Phillips, the soliciting agent of the association, knew, as above stated, that both Cooper and Fambrough were tenants of plaintiffs and paying standing rent for the premises, and had this knowledge as to Cooper at the time when the policy was issued, and as to Fambrough before the fire occurred, and received such information from B. J. Edwards, without details. Defendant did not know that such seed-cotton had been placed in the house till after the fire, and never at any time consented for anybody to place seed-cotton in the house. It is further agreed that Mrs. W. P. Fambrough, the wife of W. P. Fambrough, will swear that she was in House No. 1 when the fire started in House No. 2, and that in her opinion the fire did not originate in the seed-cotton in the house, but in the room in which corn was stored, adjoining the room in which the cotton was. Her opinion is based on the facts that when she first saw the fire it seemed to be blazing up from the corn room, and the wind was blowing from the direction of the cotton room. Before the fire occurred plaintiffs did not know that the house had been vacated nor that seed-cotton had been placed therein by Fambrough, and did not suspect either of said occurrences. Defendant is a mutual co-operative insurance company. It insures storage houses at the same rates of insurance as dwellings. Defendant is a corporation." The judge rendered judgment in favor of the defendant, and plaintiffs excepted.

*B. J. Edwards,* for plaintiffs.    *Napier & Cox,* for defendant.

LUMPKIN, J.    (After stating the facts.)

The defendant is a mutual co-operative insurance company. The by-laws of such a company, adopted in pursuance of the charter and existing at the time of the issuance of a policy, become a part thereof, and the assured is presumed to have notice of them. Civil Code of 1895, §2135. A by-law of this company, in existence when the insurance was effected, declared that "Liabilities cease at once on dwellings in the association, in which seed-cotton or loose lint cotton is stored." The policy, on its face, provided that "The association and the insured shall be governed by the by-laws of the association." The parties had a right to make the contract of insurance, and to include as one of its terms that the liability on a dwelling-house should cease at once upon the storage of seed-cotton in the house. The contract was so made and it was binding. Ostrander on Fire Ins. (2d ed.) §§329, 330, pp. 706, 707. Seed-cotton was stored in the house, and it was destroyed by fire while the cotton was there. It was ordinarily used as a residence by a tenant and his family, and was a dwelling, within the meaning of the by-law. It is contended that because the owner had rented the property, reserving no control over it, and the storing of the cotton in the house was the act of the tenant, unknown to the owner, it did not avoid the policy. The exact question has not been decided in this State. In *Adair* v. *Southern Mutual Ins. Co.,* 107 *Ga.* 297, where the policy under consideration provided for a forfeiture "by any change in the use or condition of the building, including additions or repairs, or by the erection of other buildings, or in any other manner by which the degree of the risk is increased, unless due notice is given to the company and a new agreement is entered into," it was held that the words "change in the use or condition" referred to a change of a permanent nature, and not to a mere temporary use. In discussing the question whether the act of the tenant would affect the insurance of the landlord, Mr. Justice Lewis (p. 305) said: "We are inclined to think, however, that the correct rule on this subject is laid down by the Supreme Court of Pennsylvania in the case of Long *v.* Lycoming Ins. Co., 14 Ins. L. J. 622, where it was held in effect that if the act which increased the insurer's risk was that of the tenant, unknown to the landlord, it was no excuse for the infringe-

ments of the covenants of the policy." See also same case in 115 Ga. 638.

Outside of this State, while there are some decisions to the contrary, the great weight of authority is to the effect that, under a provision of a policy like that now before us, a forfeiture will result from a violation of it by the tenant of the insured, though unknown to the landlord. In Long v. Beeber, 106 Penn. St. 466 (51 Am. R. 532), the case cited in *Adair* v. *Southern Mutual Ins. Co.,* supra, it was held, that under a clause of a policy providing that it should be void if the risk should be increased by the manner of occupancy or use of the premises, "or by any means whatever," without the assent of the company indorsed on the policy, increase of risk by the use by the tenant of the insured of a portable boiler and steam-engine for threshing could be shown; and that "it was immaterial whether the act of the tenant was with or without the knowledge or assent of his landlord." In the case at bar the provision was not merely against increase of risk, but specifically against storing seed-cotton or loose lint cotton in a dwelling, and for so doing a forfeiture was provided. In Badger v. Platts, 68 N. H. 222 (73 Am. St. 572), it was held that "if a policy of insurance provides that it shall be void if naphtha is used on the premises insured, the use of naphtha by a tenant of the insured invalidates the policy, so far as the insured is concerned, whether he knows of its use or not." See also 3 Joyce on Ins. §2222; 2 Beach on Ins. §712, and citations; 1 May on Ins. (4th ed.) §227; Kelly v. Worcester Mutual Fire Ins. Co., 97 Mass. 284; Diehl v. Adams County Mutual Ins. Co., 58 Penn. St. 443 (3); Hoxsie v. Providence Mutual Fire Ins. Co., 6 R. I. 517; Norwaysz v. Thuringia Ins. Co., 204 Ill. 334; 2 Cooley's Briefs on Ins., 1710-1711.

2. It is argued that the tenant, not the landlord, had control of the premises, and that the occupancy of the tenant put the insurance company on notice of that fact, and of his rights in regard thereto. But notice that the insured had let the premises to a tenant did not constitute notice of a violation of a provision of the policy in regard to storing seed-cotton in a dwelling-house, or operate as a waiver of the forfeiture resulting therefrom.

*Judgment affirmed. All the Justices concur.*