J. E. Skidmore *v.* Star Insurance Company of America

(No. 9482)

Submitted October 12, 1943. Decided November 30, 1943.

308

*Steptoe & Johnson* and *James M. Guiher,* for plaintiff in error.

*W. L. Wooddell* and *Wysong & Wysong,* for defendant in error.

FOX, JUDGE:

The Star Insurance Company of America complains of the judgment of the Circuit Court of Webster County, entered on the verdict of the jury, in a law action in which plaintiff sought to recover on an insurance policy issued to him by the defendant. The parties will be referred to as they stood in the court below.

On October 21, 1939, plaintiff purchased from the Board of Education of Webster County an abandoned school building, for which he agreed to pay the sum of two hundred seventy dollars. Of this amount ten dollars was paid in cash, and notes in equal amounts executed for the residue, payable in three and six months. The first of these notes was paid at or near maturity, and the second note was paid by defendant, as will be hereinafter explained. On April 21, 1940, plaintiff purchased from the defendant a fire insurance policy on the building in the amount of twelve hundred dollars. On June 6, 1940, the building so insured was destroyed by fire. The policy of insurance contained a mortgage clause in favor of the Board of Education, and some time after the fire defendant paid to the board the amount of the one hundred

thirty dollar unpaid note, with interest, amounting in the aggregate to $138.68.

Plaintiff proceeded by notice of motion, as he may do under Code, 56-2-6. His notice does not attempt to follow the statutory form provided by Code, 56-4-17, but sets out, in some detail, the provisions of the policy, and assumes to file with the notice the original policy of insurance. No question is raised as to this procedure, and it is not perceived that any could be, for the reason that the statute provides that in actions on insurance policies the original policy may be filed with the pleadings, if the pleading is in statutory form, and we see no reason why this practice may not be followed where the notice of motion procedure is followed. We doubt whether the practice should be followed in cases where the common law declaration in assumpsit is used. In the absence of a statute providing therefor, exhibits may not be filed with the declaration in a common law action.

Defendant filed its plea of the general issue. It then filed two special pleas. By special plea No. 1 it set up that the plaintiff wilfully, intentionally and unlawfully burned, or caused to be burned, the property insured; and special plea No. 2 avers the payment of the note of one hundred thirty dollars, with interest, mentioned above. No question exists as to the fact of this payment, and the same is admitted in plaintiff's notice of motion. Defendant then filed its specifications of defense, setting up two grounds, each of which, it contends, constitutes a defense against plaintiff's claim. In the first item it sets up the provision of the policy reading as follows: "Unless otherwise provided by agreement in writing added hereto this Company shall not be liable for loss or damage occurring * * * (d) while illuminating gas or vapor is generated on the described premises; or while (any usage or custom to the contrary notwithstanding) there is kept, used or allowed on the described premises fireworks, greek fire, phosphorus, explosives, benzine, gasoline, naphtha, or any other product of petroleum of greater inflammability than

kerosene oil, gunpowder exceeding twenty-five pounds, or kerosene oil exceeding five barrel"; and then avers that, prior to the time of the fire complained of, quantities of gasoline were kept, used and allowed on the insured premises in violation of the conditions set out above. In the second item of defense there is set up a provision of the policy which reads: "This entire policy shall be void if the insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after the loss". It then avers that the plaintiff, after the fire, filed proof of loss, in which he sets up the value of the property described at seventeen hundred dollars, which statement it is avered was false and untrue; and that the value of the property was far less than said sum, and that the false statement was deliberately and intentionally made, with knowledge of its falsity, and with the purpose of deceiving and defrauding defendant.

Plaintiff made reply to the special plea No. 1, in which he denied that he burned or caused to be burned the property insured. In his reply to special plea No. 2, he, in effect, admits the payment of the one hundred thirty dollar note, but contends that by making such payment defendant is estopped to deny its liability on its policy for the amount remaining due thereon, after deducting the amount paid on said note. In answer to the defendant's specifications of defense, plaintiff says, first, that he did not keep or store on the burned premises any gasoline; and, second, that the value of the property insured was, in fact, at least seventeen hundred dollars.

The case was tried, resulting in a verdict for plaintiff in the sum of eight hundred dollars. During the progress of the trial a motion was made to direct a verdict for defendant, which was overruled. After the verdict was returned a motion to set it aside was overruled. On application of defendant we granted this writ of error.

Seven separate points of error are assigned, three being of a general nature and relate to the trial court's refusal to direct a verdict for the defendant; its refusal to set aside the verdict and grant a new trial; and the point that the verdict was contrary to the law and to the great weight and preponderance of the evidence. The other points are: (1) That the overwhelming weight of the evidence showed that gasoline was being kept and allowed on the insured premises at the time of the fire, in violation of the conditions, warranties, and provisions of the policy sued on; (2) the court erred in modifying instruction No. 6 offered by the plaintiff; (3) that error was committed in the exclusion of the testimony of plaintiff's witness regarding his opinion as to the cause or origin of the fire; and (4) that the court erred in admitting the testimony of four witnesses relating to the character, reputation and integrity of one of plaintiff's witnesses. It will be observed that no error is assigned resting on the second item of defendant's specification of defenses.

These assignments will be taken up in the order in which they are stated, the first two being considered together.

On the first two points it is undisputed that gasoline was kept on the insured premises. That fact is shown by the testimony of plaintiff's witnesses. There was only one person present at the fire, and that was Charles B. Skidmore, a son of plaintiff. Plaintiff had leased the school building to his son a short time before the fire. The son and his wife had gone to Webster Springs the day of the fire, and the wife remained there. Charles B. Skidmore, after making a trip to another section of the county, returned to his home, the insured property, about three o'clock in the morning of June 6. He says that he attempted to start a fire for the purpose of preparing a meal; that he made his usual preparations by putting paper, wood and coal in the stove and igniting it, and then, followed his custom of pouring kerosene on the fire. He says that by mistake he picked up a can containing gasoline, and in pouring it on the fire caused a flash,

whereupon he dropped the can which caused the fire to spread. He attempted to put out the fire but was unsuccessful and the building was destroyed. He says that the gasoline was kept in the insured building in a two-gallon can, and that the can was about half full; and that the gasoline was kept and used for the purpose of cleaning parts of his truck, and washing his hands after he had worked on the truck he was operating at that time.

This being the undisputed evidence, plaintiff is, of course, bound by the fact that gasoline was kept on the premises. . That was clearly in violation of the provision of the policy set out above providing against such practice; but another provision of the same policy, known as the "Work and Materials Clause" contains this provision: "Permission is hereby granted for such use of the premises as is usual and incidental to the occupancy as herein described and to keep and use all such appliances, devices, articles and materials (including such materials as are prohibited by the printed conditions of this policy) in such quantities as are usual and incidental to such occupancy." This presents the question of whether keeping gasoline on the premises was, in fact, a violation of the conditions, warranties and provisions of the policy sued upon; and that depends upon the force and effect we give to the clause last above quoted.

Considering together the two provisions of the policy referring to gasoline and other explosives, we reach the conclusion that the provision first quoted, in which the keeping or use of gasoline is prohibited, is modified by the provisions of the work and materials clause. The first provision apparently contemplates that there may be some deviation from its strict requirements, because it says that unless otherwise provided by agreement in writing, gasoline shall not be kept or used. The provision in writing requirement is met by the work and materials clause, and that provides that permission is granted to keep and use appliances, devices, articles and materials "including such materials as are prohibited by the printed

conditions of this policy", and this we take to mean fireworks, greek fire, phosphorus, explosives, benzine, gasoline, and naphtha expressly mentioned in the printed conditions of the policy above quoted. This being true the only question which arises under the work and materials clause is whether gasoline kept and used thereunder was in such quantities as could be said to be usual and incidental to the occupancy of the premises, and this, in our opinion, was, in the first instance, a jury question, but subject, of course, to the rule which will not permit a jury finding on facts to stand where plainly wrong. There is division among the members of the Court as to whether the evidence introduced by the plaintiff is sufficient to sustain the jury finding on that point; but as will hereinafter appear, that division is not important to a decision, and inasmuch as the case will have to be retried it would probably be inadvisable to comment thereon.

This leads to the question created by the modification of instruction No. 6 offered by the defendant. The record is not clear as to what the court did in relation to this instruction. The instruction as given reads as follows: "The court further instructs the jury that if you believe from a fair preponderance of the evidence that at and prior to the time of the fire complained of on June 6, 1940, quantities of gasoline *beyond that which was usual and incidental to the occupancy of the building* were being kept, used and allowed upon the insured premises by plaintiff's tenant who was then occupying the insured building, then the plaintiff is not entitled to recover, and you should return a verdict in favor of the defendant, even though you may further believe from the evidence that the plaintiff himself did not know that his tenant had such gasoline upon the premises." According to the petition for writ of error filed in this case, the court modified the instruction by adding the words "beyond that which was usual and incidental to the occupancy of the building", which we have underscored in copying the instruction. No question is raised as to this being the true state-

ment of what was done. It is understood that the trial court made this modification by interlining the original instruction offered by plaintiff; but the original instruction is not before us, and neither the certified nor the printed record shows that fact. It is evident that the instruction as offered by plaintiff was based upon the provision of the policy which prohibited the keeping of gasoline on the insured premises; and that the modification made by the trial court was based upon the work and materials clause above quoted.

It is quite clear that, aside from the provisions of the work and materials clause, the provision of the policy prohibiting the keeping and use of gasoline on the premises should be enforced. This was clearly held in *Bailey v. Mutual Fire Insurance Co.,* 116 W. Va. 544, 182 S. E. 288. It is also clear that the keeping of gasoline on the insured premises by a tenant violates the policy, and that it is immaterial whether the insured himself had knowledge of that fact. The following authorities, cited by defendant, amply sustain that proposition: *Liverpool & London & Globe Insurance Co.* v. *Gunther,* 116 U. S. 113, 29 L. ed. 575; *Westchester Fire Ins. Co.* v. *Ocean View Co.,* 106 Va. 633, 56 S. E. 584; *Kelly* v. *Worchester Ins. Co.,* 97 Mass. 284; *Norwaysz* v. *Thuringia Ins. Co.,* 204 Ill. 334, 68 N. E. 551; *German Fire Ins. Co.* v. *Board of Commissioners,* 54 Kan. 732, 39 P. 697; *Badger* v. *Platts,* 68 N. H. 222, 44 A. 296; *Kohlman* v. *Selvage,* 34 App. Div. 380, 54 N. Y. S. 230; *Leonard* v. *Northwestern Ins. Co.,* 290 F. 318; *Miller* v. *Union Assurance Society,* 39 F. 2d 25; *Bias* v. *Globe & Rutgers Co.,* 85 W. Va. 134, 101 S. E. 247; 14 R. C. L. 1197; 26 C. J. 221.

The defendant also cites *Miller* v. *Union Assurance Society, supra; Bailey* v. *Mutual Fire Ins. Co., supra; Gunther* v. *Liverpool & London & Globe Ins. Co., supra; Norwaysz* v. *Thuringia Ins. Co., supra;* as well as *Vandervolgen* v. *Manchester Fire Ins. Co.,* 123 Mich. 291, 82 N. W. 46, and 3 Cooley's Briefs on Insurance, page 2610, in support of its contention that the work and materials clause

mentioned above is inapplicable, and at most only constitutes a limited permit which did not apply to the facts of the present case. We see nothing in these authorities which upholds the proposition that the clause is inapplicable to cases of this nature. Whether the facts of this case require it to be applied is another question. The clause can only be applied to the limited situation where the keeping and use is usual and incidental to the occupancy, and in quantities not greater than are usual and incidental to such occupancy. That is a factual matter which, under ordinary circumstances, the jury has the right to determine, and has been determined in this case.

But whether the evidence is sufficient to clearly bring the case within the provisions of the work and materials clause is not the sole test. There was evidence to the effect that Charles B. Skidmore, plaintiff's tenant, made use of the gasoline in connection with his work of driving a truck. Whether the keeping of gasoline in his residence was usual and incidental to its occupancy may be questionable; but plaintiff was entitled to have that theory of his case presented, and to have an instruction on that point. It has been long settled in this State that "If there be evidence tending in some appreciable degree to support the theory of the proposed instructions, it is not error to give such instructions to the jury, though the evidence be slight, or even insufficient to support a verdict based entirely on such theory". *Snedeker* v. *Rulong,* 69 W. Va. 223, 71 S. E. 180. See also *Barna* v. *Coal Co.,* 83 W. Va. 216, 98 S. E. 158; *Myers* v. *Cook,* 87 W. Va. 265, 104 S. E. 593. In view of these authorities, and in keeping with our view of the force and effect to be given to the two policy provisions, which we read and consider together, we are of opinion that the court did not err in modifying instruction No. 6 in the manner indicated. We are not, at this time, passing on whether the verdict of the jury should or should not have been sustained on that point of the case.

Defendant sought to introduce the testimony of a wit-

ness giving his opinion on whether the fire was of incendiary origin, and the court refused to permit him to testify on that point. We think this action of the court was proper. The circumstances surrounding the burning of the insured property are not such as lend themselves to testimony of so-called expert witnesses. The facts involved were of an untechnical nature and such as could clearly be comprehended and passed upon by an intelligent jury. In such circumstances there is no place for the opinion evidence of a so-called expert. The defendant cites *State* v. *Gore*, 153 Kan. 551, 106 P. 2d 704, which supports defendant's contention that this testimony should have been admitted. Testimony of that character was admitted in that case, a criminal case, and was based upon the apparent view that the jury would be afforded assistance by such testimony. We cannot see that the jury in this case would have been aided by the testimony offered. Then, the discretion of the trial court as to the admission of testimony is not usually interfered with, except where it apears that it was plainly abused. Aside from this, while we recognize the legitimate place, and even the necessity, of expert testimony in certain types of cases, the abuses which have crept into its use are of such a nature as to make the Court reluctant to expand the field in which the expert witness may operate.

As stated above, defendant filed a plea to the effect that plaintiff had burned or caused to be burned the insured property for the purpose of defrauding the defendant, and fraudulently collecting insurance upon the policy sued on, and the plaintiff denied the allegation of that plea and issue was joined thereon. It developed during the trial that, if the allegation of this plea was correct, the building was, in fact, burned by Charles B. Skidmore, son of the plaintiff, and this was brought out in the testimony introduced on behalf of plaintiff. The fact appears to be that Charles B. Skidmore was indicted in the Circuit Court of Webster County for the burning of this particular building, and that trial on the indictment had not been had

when this case was tried. During the course of the plaintiff's testimony, counsel for plaintiff in his examination of Charles B. Skidmore, asked the following question: "Did he (referring to plaintiff) ever, in any way, shape or form, procure you to burn that house? You are charged in a separate proceeding in this court with having wilfully and feloniously burned that property. Did your father ever in any way, shape or form, procure you to burn that house?", to which he replied, "No, sir". He was then asked: "Did you wilfully, feloniously and maliciously burn that property?", to which he answered, "No, sir". In cross-examination of this witness, counsel for defendant asked this question: "I believe you have—or counsel have—already referred to the fact that you have been indicted in this court in connection with burning the property. That is correct, is it?", to which he answered "yes, sir"; and then to the question: "And that indictment is still pending, I believe," he answered, "Well, I suppose, as far as I know. I tried to get a trial here and couldn't get it somehow". Before closing plaintiff's case, counsel asked to introduce testimony bearing upon the reputation of Charles B. Skidmore, as an honest and law-abiding citizen, and based such request upon occurrences during the trial which are illustrated by the above quotations from the testimony. The court permitted such testimony to be introduced, and four witnesses were examined on that point, all of whom testified that such reputation was good. The court limited the testimony by this statement during examination of one of the witnesses: "It may be out of its usual place in a trial to introduce the fact that this man had been indicted by a grand jury for setting fire to this school house; that is the substance matter of this controversy, or the burning of it is, at any rate, and it is to repel the effect of that evidence taken here in the presence of the jury that this evidence is introduced, it is introduced for no other purpose at all, and would not be admitted for any other purpose."

Only in a special type of cases in which the character

of a litigant is brought into question, or in circumstances where character becomes clearly material to the issue being tried, is it usual or permissible to introduce evidence on character in a civil case. The following cases sustain this position: *Continental Ins. Co. v. Jachnichen*, 110 Ind. 59, 59 Am. Rep. 194, 10 N. E. 636; *Stone v. Hawkeye Ins. Co.*, 68 Iowa 737, 56 Am. Rep. 870, 28 N. W. 47; *Northern Assurance Co. v. Griffin*, 236 Ky. 296, 33 S. W. 2d 7; *Schmidt v. New York Union Mutual Fire Ins. Co.*, 1 Gray (Mass.) 529; *American Fire Ins. Co. v. Hazen*, 110 Pa. 530, 1 A. 605; *Grant v. Pendley*, (Tex.) 39 S. W. 2d 596, 78 A. L. R. 638; *Horton v. Tyree*, 104 W. Va. 238, 139 S. E. 737. The case of *Horton v. Tyree, supra*, was a case in which the defendant was charged with fraudulent misrepresentations in the matter of the sale of stock in a coal company, and testimony tending to show the good character of defendant was held to be inadmissible. In the case at bar, the plaintiff is charged to have been engaged in a fraudulent attempt to collect insurance, through the destruction by fire of the insured property which, of course, would be a criminal offense. If he were being tried before a jury on an indictment for burning the building, evidence bearing on his character would be admissible as a defense to the charge, and, on this theory, it may be plausibly contended that, where he is charged with a like offense in a civil action, he should be permitted to show his good character. But we do not think the authorities sustain that proposition. We understand the authorities to hold that only in rare cases such as libel, slander and cases where character is directly involved, or otherwise becomes directly material, can proof thereof be permitted in a civil case. The defense of incendiarism is frequently made in insurance cases as the basis of a charge of fraudulently attempting to collect insurance, and our attention has not been called to any case where testimony of witnesses as to character was ever relied upon as a defense to that charge. The strongest case supporting the trial court's action is *Hess v. Marinari*, 81 W. Va. 500, 94 S. E. 968. That was a case

where punitive damages were being sought against defendant. In order to lay a basis for such damages, it was necessary to show that defendant had acted with criminal intent. The Court held that, while in a civil suit the general character or reputation of the defendant is not involved, and evidence thereon not admissible, it would be permitted to be introduced in cases where it was necessary, on the part of the plaintiff, to show criminal intent on the part of the defendant, as an element of recovery, and as a guide to the jury in determining the amount that would be adequate to punish him for the offense charged. It is noted that it was not admitted solely on the question of the right of recovery, but also as bearing on the quantum of damages. While this case apparently widens the door for the introduction of testimony as to character in civil cases, we do not think it goes to the extent of allowing testimony as to the character of litigants to be brought before the jury in the trial of an ordinary case where there is a charge of incendiarism against the plaintiff. For that reason we would be inclined to hold that even testimony as to the character of plaintiff would not have been admissible. For stronger reasons we do not think testimony on the reputation of a witness is admissible. Should we enter that field there would be no point at which a line could be drawn. Carried to the extreme, every person suspected of perjury in a civil case would claim the right to bolster up his testimony by showing his good reputation. In this case the witness, Charles B. Skidmore, occupied an important place in the trial. He was the sole witness to the burning of the insured property. If anyone intentionally set fire to the building, he did. The defendant's special plea No. 1 alleged that plaintiff burned or caused to be burned the insured building, and if he caused it to be burned, he operated through the son, who was this particular witness. But with all this, we do not think that either the plaintiff's or his witness's reputation as honest law-abiding citizens was properly in issue, and we think the court erred

in admitting testimony, relating to such reputation as applied to Charles B. Skidmore, and under well-settled rules the error is presumed to have been prejudicial.

We are not disposed to accord great weight to what occurred during the trial. The issue of incendiarism was already before the jury. It was set up in special plea No. 1 and denied by plaintiff in his answer thereto. The mere fact that counsel for plaintiff referred to another proceeding and used the words, "wilfully and feloniously", commonly supposed to refer to a crime, and the passing reference by defendant's counsel to the fact of an indictment, which was clearly implied in what plaintiff's counsel had said, in our opinion, afforded no basis for the introduction of evidence on reputation in violation of the general rule governing that character of testimony in civil cases. We think it would be unwise to open the door for the introduction of character testimony in civil cases of the nature of that at bar.

The judgment of the circuit court is reversed, the verdict of the jury set aside, and a new trial awarded.

*Judgment reversed; verdict set aside;*
*new trial awarded.*