HELEN CLARK

*v.*

CHARLES W. DOUGLAS, *Administrator, etc.*

(No. 10607)

Submitted February 3, 1954. Decided March 30, 1954.

*George S. Wallace, George S. Wallace, Jr., E. Garland Ray,* for plaintiff in error.

*Thomas West, E. Henry Broh,* for defendant in error.

LOVINS, JUDGE:

Plaintiff, Helen Clark, sometimes referred to as Helen Ruth Clark, prosecuted her action of trespass on the case against Charles W. Douglas, administrator of the estate of George Douglas, deceased, in the Circuit Court of Cabell County, for damages for personal injuries alleged to have resulted unto her from an assault committed upon her by George Douglas, the decedent. The declaration charges that defendant's decedent, with force and arms, assaulted and shot plaintiff, causing her serious and permanent injuries. The jury returned a verdict in favor of plaintiff for $8,250.00, and a judgment was entered for that amount. Upon petition of the administrator this Court granted a writ of error.

Plaintiff is a niece of the second wife of George Douglas, who died about three years before the date of the injuries complained of. Sometime subsequent to the death of the second wife of George Douglas, plaintiff went to his home

in the City of Huntington to live. At the time of the injuries to her she was living at that home, a two story dwelling on Washington Avenue. The injuries occurred on the night of April 17, 1950. According to plaintiff's testimony, she was awakened in the night, saw a gun pointed at her, and was shot while attempting to jump from a window in her bedroom on the second floor of the dwelling. Since the admission of certain testimony given by plaintiff furnishes the principal contention of defendant, we quote the pertinent part thereof: "I was wakened and when I woke there was a gun pointing towards me. And there was a window right by my bed, and I jumped for the window and raised the window to jump. And when I was in the window I was shot. I had my arm up like that and I was shot right here. And the bullet—I had to let loose and fall from the second floor to the ground, on the sidewalk, and then I hobbled next door to Mr. Bishop's." Other evidence introduced by plaintiff establishes, or at least would warrant a jury finding, that no person other than plaintiff and decedent, George Douglas, was in the dwelling at the time the shot was fired.

No objection was made to the admission of the quoted statement of plaintiff at the time it was offered. Later, in the course of the trial, defendant moved "that the testimony of Helen Clark about the situation that she was in at the time that she was shot be stricken from this record". The motion was overruled. The motion was renewed during the course of the trial and again overruled. The admission of this evidence, and the motion to strike, were by defendant specifically assigned as grounds for setting aside the verdict. The basis of the objection to the testimony is that it is in violation of that provision of Code, 57-3-1, as amended, reading: "* * * No party to any action, suit or proceeding, nor any person interested in the event thereof, * * * shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased * * *". After plaintiff was shot she either jumped or fell from the second story window. There apparently

is no question that she was severely injured from the shot and fall. Large sums were expended by her in her effort to recover, and apparently some permanent injury resulted.

Soon after plaintiff was shot, police officers of the City of Huntington arrived at the Douglas dwelling. Officer Adams testified that they found George Douglas "sitting there on the steps with his gun in his hand. And I asked him if he shot Miss Clark. And he said 'Yes, I shot her, the damm bitch poisoned me.' I said 'Come out, I want to talk to you a minute.' He said 'if you sons of bitches want me, come in and get me.'" Failing in their attempt to persuade George Douglas to surrender, the officers shot tear gas into the dwelling and "almost simultaneously with that concussion of the tear gas gun we heard 2 shots in rapid succession". The officers then observed George Douglas lying on the floor, with a gun near him. After being removed to the porch, George Douglas stated to Officer Jarrel "that he shot Ruth Clark, because the bitch tried—The bitch poisoned him. He said she poisoned him. He shot Helen Clark—Ruth Clark, the way he stated to me". George Douglas was removed to a hospital, where he died from the effects of the self inflicted gunshot wounds a few days later.

The gun, a 32 caliber Smith & Wesson pistol, found by the officers near George Douglas immediately after the two shots were fired, and a bullet or pellet removed from the body of plaintiff by her surgeon a short time after she was shot, were delivered to two persons experienced in ballistics, who, after completing tests and examinations, gave opinions to the effect that the bullet or pellet removed from the body of plaintiff had been fired by the gun found by the officers near George Douglas.

Was it prejudicial error to refuse to strike from the record the testimony of plaintiff, quoted above, relating to the manner in which she was shot? Does such evidence constitute a "personal transaction or communication" between plaintiff and George Douglas? It is contended by

plaintiff that the testimony amounted to no more than statements by plaintiff of her own actions or conduct, and that "her testimony was limited to the things that she herself did". We are of the opinion, however, that the testimony must be viewed in the light of the circumstances and other evidence before the jury and, when so viewed, it told the jury who fired the shot that injured her. It must be remembered that the evidence before the jury established, or at least furnished the basis for a finding, that at the time plaintiff was shot no person other than George Douglas and Helen Clark was in the dwelling, and that she was shot by some person from within the dwelling. In such circumstances, the testimony of plaintiff told the jury plainly and definitely that George Douglas was the person who fired the shot and constituted testimony of plaintiff of "a personal transaction or communication" with George Douglas.

In considering the admission of evidence under the pertinent statute, in *Owens* v. *Owens' Administrator*, 14 W. Va. 88, this Court quoted with approval a statement found in the case of *Peck* v. *McKean*, 45 Iowa 18, which reads, "in an action against an administrator to recover upon an implied contract for services rendered the deceased, the plaintiff cannot be permitted to testify to the facts, which would raise an implied promise." Under that holding, if the testimony of plaintiff in the instant case did no more than merely imply that George Douglas shot plaintiff, it would still be inadmissible. In *Calwell* v. *Prindle's Adm'r.*, 11 W. Va. 307, wherein the payment of a bond or note was involved, the Court, in considering a very similar question to that involved in the instant case, stated: "* * * And so, the note or bond being in fact a transaction had personally with Prindle by the plaintiff, it must follow that the plaintiff is not competent to testify as a witness on his behalf as to any matter or thing in relation to his possession or loss of said note or bond. As before stated, it must be manifest, that plaintiff is not competent to testify in his own behalf as to the payment of the note or bond by him personally to Prindle; but his

counsel by his argument seeks to divide the transaction and satisfy us, that although it may not be competent for plaintiff on his own behalf to prove the payment of the debt by plaintiff to Prindle, or the delivery of the note or bond by Prindle to plaintiff, yet that it is competent for the plaintiff to prove as a witness in his own behalf, that he had possession of the bond or note after the date of the deed of trust, and in the year 1861, and that it was lost or destroyed while in his possession during the late war. It is quite evident, that to sustain the position of plaintiff's counsel in this respect would be to permit the defendant [plaintiff] to accomplish just what the statute prohibits, viz: To prove in his own behalf the payment of the note or bond by plaintiff to Prindle, the intestate * * *".

In *Dominguez* v. *Garcia*, 36 S. W. 2d 299, the Court held: "2. Words 'transaction with,' as used in statute, with reference to transactions with deceased, include every method by which one person can derive impressions or information from conduct, condition, or language of another." See *Ludlow* v. *Dwyer*, 3 N. J. Super. 1, 65 A. 2d 74. In the recent case of *Mann* v. *Peck, Administrator*, this Court carefully reviewed its holdings in cases involving questions arising under the applicable statute, and we need do no more here than refer to that opinion.

Plaintiff points out that no objection was made to her evidence at the time it was received, and contends that the motion to strike did not sufficiently point out that part of the testimony sought to be stricken from the record, relying upon the statement found in 7 M. J., Evidence, Section 298, which reads: "* * * And a party who asks to have evidence excluded, which has been admitted without objection, must recall and point out distinctly the objectionable answers or statements, or the court may properly overrule the motion to exclude." There is no merit in the contention. The motion to strike directed the attention of the court to "the testimony of Helen Clark about the situation that she was in at the time that she was shot". This, we think, was clearly sufficient to inform the

court of the particular part of plaintiff's testimony that was sought to be stricken. See *State* v. *Noble,* 96 W. Va. 432, 123 S. E. 237.

Plaintiff argues further that the admission of testimony of plaintiff, though it be considered as relating to a transaction or communication with George Douglas, was not prejudicial error since it appears from the whole record that the verdict should have been for plaintiff, relying on cases like *State* v. *Miller,* 85 W. Va. 326, 102 S. E. 303, wherein it is held: "2. Error in the admission or rejection of evidence, or in the giving or refusing of instructions to the jury, will not be good ground for reversal when it appears upon the whole case as presented and the admissions of the defendant the verdict ought to be confirmed." In the instant case, we can not say that notwithstanding the objectionable evidence, the verdict would have to be for plaintiff. No doubt the jury considered this evidence in its deliberations, may have disbelieved the other evidence relating to the same matter, and based the verdict solely on the inadmissible evidence. It is true that there is in the record sufficient evidence, other than that given by plaintiff, to support the verdict. We are not here concerned, however, with the sufficiency of the evidence to support the verdict, but with the admission of improper evidence which may have prejudiced the defendant. See *Skidmore* v. *Star Insurance Co.,* 126 W. Va. 307, 27 S. E. 2d 845; *Slater* v. *United Fuel Gas Company,* 126 W. Va. 127, 27 S. E. 2d 436; *Byrd* v. *Virginian Railway Company,* 123 W. Va. 47, 13 S. E. 2d 273; *Wheeling Mold and Foundry Co.* v. *Wheeling Steel and Iron Co.,* 62 W. Va. 288, 57 S. E. 826.

The taking of the evidence before the jury was completed just before the adjournment of court. On adjourning, and after dismissing the jurors for the day, the court announced to counsel that it would proceed with the consideration of instructions. Thereupon, counsel for plaintiff stated that no instructions would be offered on behalf of plaintiff. Counsel for defendant offered Instructions Nos. 1 and 2, which were marked "Given" by the

court. On the following morning, when the court convened, plaintiff requested the court to read unto the jury her instructions Nos. 1, 2 and 3. No. 3 was withdrawn, No. 1 was refused, and No. 2 was given to the jury, over the objection of defendant. On reading plaintiff's Instruction No. 2 to the jury, the court observed that it referred to the alleged wrongdoer as the "defendant", when it should have referred to the alleged wrongdoer as "defendant's decedent". Defendant then moved the court to withdraw a juror, and for a new trial, which motions were denied. Plaintiff then offered her Instruction No. 2A, which was in the same wording as No. 2 except as to a correction of the erroneous reference to the alleged wrongdoer. Defendant objected to the giving of plaintiff's Instruction No. 2A, one of the grounds of objection being that "it comes too late". The objection was sustained by the court "for the reason that it was offered too late, and for other reasons * * *". The court then read to the jury defendant's Instruction No. 1 and part of defendant's Instruction No. 2, when it was discovered that defendant's instructions contained the identical error found in plaintiff's Instruction No. 2. Defendant then offered his Instructions Nos. 1A and 2A and, upon objections of plaintiff, the court refused to give to the jury defendant's instructions "for the reason they are offered too late. All instructions are refused as tendered too late". After having instructed the jury to disregard the instructions read, the court, upon motion of plaintiff and over objection of defendant, submitted the case to the jury without any instructions.

The applicable rule of "Rules of Practice and Procedure for the Circuit Court of Cabell County", as quoted in the record of this case, provides that "All instructions to juries shall be reduced to writing, and a copy presented to opposing counsel at the conclusion of the evidence". Neither plaintiff nor defendant complied strictly with the requirement of the rule. The court, however, ruled, and we think correctly, that the rule permits discretion on the part of the court in the application of the rule. Instructions are for the benefit of juries and in furtherance of justice,

and ordinarily should not be refused because of untimely presentation, unless some unreasonable delay would be occasioned in the trial, or the delay would result in some injustice to one or more of the litigants. Certainly, instructions should be timely offered and, if not so offered, may properly be refused. Necessarily, these matters must rest very largely in the discretion of the trial court. We can not say that such discretion was abused in the instant case. We can not know the time of the delay, if any, occasioned because of the untimely presentation of the instructions refused, or of any prejudice which may have resulted. Moreover, did not the defendant in the instant case invite the error, if error be assumed? See *Toler* v. *Casinelli,* 129 W. Va. 591, 41 S. E. 2d 672; *Dangerfield* v. *Akers,* 127 W. Va. 409, 33 S. E. 2d 140; *Foard* v. *Harwood,* 113 W. Va. 619, 169 S. E. 465; *Thomas* v. *Jones,* 105 W. Va. 46, 141 S. E. 434; *McElhinny* v. *Minor,* 91 W. Va. 755, 114 S. E. 147; *James Sons Co.* v. *Hutchinson,* 79 W. Va. 389, 90 S. E. 1047; *Good* v. *Dyer,* 137 Va. 114, 119 S. E. 277.

We have carefully examined the questions arising as to other errors assigned by defendant, and find the errors so assigned without merit.

The judgment complained of will be reversed, the verdict of the jury set aside, and defendant awarded a new trial.

> *Judgment reversed;*
> *verdict set aside;*
> *new trial awarded.*