# CHARLESTON.

## STATE *v.* GEORGE PATKO.

Submitted September 30, 1924. Decided October 7, 1924.

1. INTOXICATING LIQUORS—*Refusal to Instruct Verdict for Defendant in Prosecution for Unlawful Possession of Mash Held not Erroneous.*

    In the trial of an indictment for having possession of "mash" for the purpose of making intoxicating liquors under Sec. 37, Chap. 32-A of the Code, it is not error to refuse to instruct a verdict for defendant at the conclusion of the State's evidence where it is shown that the accused had in possession about twenty-five gallons of a mixture of various kinds of grapes, raisins and water, in a state of fermentation, in his cellar, a boiler in his back yard; and there is found secreted in the cellar to an unoccupied portion of his house a cap or lid to the boiler and a metal coil which could be attached to the cap; and there is also found a gallon of moonshine liquor secreted in the foundation of an adjoining house, all within defendant's easy access. (p. 299).

2. CRIMINAL LAW—*Legality of Search and Seizure Warrant for Court.*

    Whether a search and seizure warrant was issued upon proper information duly sworn to showing probable cause, is to be determined by the court and not by the jury. (p. 303).

3. INTOXICATING LIQUORS—*Refusal of Requested Instruction that Defendant's Possession of Mash Must be for Purpose of Making Intoxicating Liquor Held Error.*

    In such trial, where the jury has not been instructed that the possession of "mash" is not unlawful unless it is shown beyond reasonable doubt that the possession was for the purpose of making intoxicating liquors, (the vital question at issue), and the prosecuting attorney in the closing argument reads to the jury the statute on which the indictment is based, immediately followed by request from defendant's counsel that the jury be instructed that defendant should not be found guilty unless the jury believed beyond a reasonable doubt that his possession of the "mash" was for the purpose of making intoxicating liquor, basing his request upon the assertion that all of the statute was not read, a situation arises which calls for such instruction, and it is error to refuse it. (p. 304).

Error to Circuit Court, Brooke County.

George Patko was convicted of the unlawful possession of mash for making intoxicating liquor, and he brings error.

*Reversed; verdict set aside; new trial.*

. *Robert Wilkin,* and *J. J. P. O'Brien,* for plaintiff in error.

*E. T. England,* Attorney General and *R. Dennis Steed,* Assistant Attorney General, for the State.

LIVELY, JUDGE:

George Patko was tried and sentenced for having in his possession "mash" for making intoxicating liquors. He was sentenced to confinement for ninety days, and to pay a fine of $250.00. To that judgment he obtained this writ, and alleges that the court erred; (1) in permitting parts of a moonshine still found in an uninhabited portion of his dwelling-house, to be admitted in evidence; (2) the introduction of, and testimony concerning, a quantity of "mash" found in his cellar; and (3) refusal of the court to instruct the jury, after argument and before the jury retired to the jury room, to the effect that the intent to make intoxicating liquors out of the mash must exist, otherwise it is not unlawful to have possession thereof.

Armed with a search warrant, Miller, a police officer, accompanied by Hahn and Fowler, went to the dwelling of Patko late in the afternoon of September 26, 1923, for the purpose of making a search of the premises. He occupied a double house, known as the "old Humes" property. It was built as a dwelling and store-room, but the store-room had been converted into dwelling rooms, and that portion of the property was not occupied at that time. There was no connecting door through the partition dividing the former store-room part from the portion occupied by Patko. Upon arriving, the officers exhibited the search warrant to Patko, and say that he made no objection to a search. They found in his cellar a fifty gallon barrel or keg, about one-half full of grapes and water in a state of fermentation. Miller says he found raisins mixed with the grapes. The other officers, whose inspection was casual, saw no raisins. They all say the grapes

were of different varieties, including white grapes. They took a sample of the liquid, which was exhibited to the jury. Miller says that he poured one-half of a pint of carbon oil into the barrel in order to render the mixture left in the barrel unfit for use. The officers made a search of the unoccupied portion of the property, and in the cellar thereof, which was entered thru a back window then open, they found a cap to a boiler and a metal coil which could be attached to the cap. They also found a boiler near the kitchen door of defendant. It does not clearly appear that the cap fitted the boiler, but it is designated as the cap to this boiler. Hahn found a gallon of moonshine liquor in what he termed an air-hole or "cat-hole" in that portion of the foundation of a house built about four feet from the "old Humes property" and then occupied by one Allen, an Elder in the Latter Day Saints Church. All of these articles were exhibited to the jury. The record does not disclose whether the cap and coil or the boiler had been in recent use. No doubt the counsel considered that the jury could determine that fact from inspection, and thought it unnecessary to encumber the record with these details. It appears that a fellow-country-man of Patko, one Sodoski, a Pole, had formerly occupied the vacant portion of the house, and had moved to Philadelphia; and when moving had made Mrs. Patko a present of the boiler, which she says she used for washing clothes. Defendant, his wife, daughter, and two or three other witnesses, some of whom boarded with him, testified that the grapes in the barrel were home grown, purchased from a farmer, and were being fermented for the purpose of making grape juice for use in the family and for no other purpose; that after the officers left, the liquid was made into grape juice and bottled. They said there was no taste of oil in the concoction, some of which was partaken of by some of the witnesses the day after the officers left. The Elder's house was built along-side the Humes house, with a space of three or four feet between them, and it was in that portion of the foundation of the Elder's house that the gallon of moonshine liquor was found by Hahn. Asked how he happened to search in that particular place, he replied that he was in the back-yard of the Humes property when a boy came to him and gave

him information or said something to him when he immediately went between the houses and discovered the liquor. Upon objection he was not permitted to say what the boy told him, and the evidence of the boy was not taken. Witness Milligan, who lived across the street from Patko, about seventy feet distant, was sitting on his porch about the time the officers came, and while they were there observed Patko's girl, twelve years of age, come out of the front door with something wrapped in a cloth and disappear between the two houses, returning in a short time. The evidence of the little girl was that she had her doll wrapped up which she was carrying over to the Allen house where she and the other children were playing ''tea party'', and after she was there a short while, she was recalled by her mother to help her interpret what the men in the house were saying, the little girl being more familiar with the English language than her mother. She was not sure whether the officers had come to the rear of the house at the time she emerged from the front part to carry her doll to the childrens' ''tea party''. This is the substance of the evidence.

The first assignment of error is the introduction in evidence of the parts of the still found in the basement under the unoccupied portion of the Humes house; and the introduction of the moonshine liquor found in the foundation wall of the Allen house. It is argued that defendant had not been shown to have any connection whatever with these articles; that he had no access to the unoccupied portion of the house, and had no connection whatever with the liquor found under the Allen house. While there is no direct connection, the near proximity of these articles, one of which, a cap, was evidently made for the boiler which was in defendant's possession, could be well considered by the jury on the issue, namely, whether the possession of the mash was coupled with the intent to make liquors. The window in the rear of the unoccupied portion of the house being open and affording ready access to where the parts of the still were secreted is significant. As before stated, the record does not show the condition in which the parts of the still were, whether evidencing recent use, or in a rusted condition evidencing abandonment and non use. The articles were before the jury for

its inspection. In *State* v. *Kees,* 92 W. Va. 277, the accused was found in possession of a large quantity of dried peaches of a special brand and in containers bearing the name of the merchant who sold them. A still in operation was found quite a distance from the house of the accused on land of another person near a traveled path which led to the defendant's house, and evidence around the still showed the use of peaches of like kind and marking as those found in the home of defendant. We held that these circumstances warranted the jury in finding that accused was aiding and abetting in the operation of the still. In the instant case the jury had the additional fact that Patko's daughter left his house with something covered in a cloth after the officers had arrived by way of the alley back of the house, and carried something wrapped up in the cloth to the narrow passage between the Humes house and Allen house. Just why Hahn went to this particular place and immediately found the secreted liquor is not clear. Nor is it clear what person placed the liquor there. A boy told him something, which something the court properly refused to permit him to divulge. If the boy's evidence would have connected defendant with the hidden liquor a very important part of the State's case was omitted, when the boy was not examined. The jury was instructed that in considering evidence, partly circumstantial, it was essential that the circumstances be proved to a moral certainty so as to exclude every hypothesis but the one proposed to be proved; and if the circumstantial evidence did not do so, then they should find for defendant. The court properly admitted the parts of the still and the liquor under the circumstances detailed as bearing upon the question at issue.

The next assignment of error is that all of the evidence pertaining to the finding of the mash, the boiler, the parts of the still and the moonshine liquor, should have been excluded, because, it is claimed, the information given by Miller to Justice Jacob as the basis of the issuance of the search warrant was not sworn to. The information was reduced to writing and states on its face that it was sworn to, having been signed by Miller. It is regular on its face. It will be observed that neither the Constitution, Article 3, Section 6,

nor the Statute 32-A, Section 9, require that the complaint
or information should be reduced to writing. It is sufficient
if the information showing probable cause be supported by
oath or affirmation. *Ex parte Hickey,* 93 W. Va. 411. Upon
being interrogated, the Justice who issued the warrant and
who introduced in evidence the affidavit or information, to-
gether with the warrant, said that Miller had sworn to it,
but that he could not be sure because he could not remember
all that transpired at that remote date. Miller says that he
raised his hand and swore to the information which he gave
and signed before Squire Jacob, and which was in evidence.
Asked if he made this form of oath: "Do you solemnly swear
the facts and statements therein contained are true to the
best of your knowledge and belief?" He replied that he did
not; that the Justice never administered that form of oath.
The presumption is that an officer will do his official duty.
He has certified that Miller swore to the information. Miller
says he held up his hand and swore to the paper as written,
but did not swear in a particular manner. Besides defendant
made no objection to the search of his house. *State* v. *Mont-
gomery,* 94 W. Va. 153. We think it reasonably clear that
the search warrant was supported by information under oath
showing probable cause. Therefore, the introduction in evi-
dence of the articles seized in execution of the warrant was
proper. The admissibility of this evidence was a question for
the court and not for the jury. 5 Ency. Digest Va. & W. Va.
Reports 351, title, "Admissibility of Evidence". Defendant
by his instructions Nos. 11 and 12, refused, attempted to
have submitted to the jury the question of the admissibility
of the information, warrant and the articles seized there-
under. These instructions were properly refused. It is a
practice in the Federal courts, where articles of evidence
have been obtained by reason of an illegal search and seizure,
for the defendant to file a petition with the court before trial
asking for the return of the articles illegally seized, and sup-
pression of the evidence. Issue is made on the petition and
the question of the legality of the search and seizure is de-
termined by the court prior to the trial. This amounts to
nothing more than a test of the admissibility of the evidence
by the court. We have held that it is not necessary that a

petition be filed and determined by the court in that way because the rights of the defendant will be conserved by a motion to reject the evidence when offered in the trial. *State* v. *Wills*, 91 W. Va. 659; *State* v. *Montgomery*, 94 W. Va. 153. At the conclusion of the State's evidence, the court overruled a motion by defendant to direct a verdict in his favor. This motion was properly overruled. The State's evidence, with the inferences reasonably to be drawn therefrom, was sufficient to sustain a verdict of guilty.

The only remaining assignment is that the court refused to instruct the jury after the argument and after the prosecuting attorney in closing his argument had read to the jury a portion of Section 37, of Chap. 32-A of the Code, on which the indictment was based, to the effect that the jury must believe beyond a reasonable doubt that defendant had in his possession the mash for the purpose of making intoxicating liquor therefrom. At the conclusion of the evidence defendant offered thirteen instructions, all of which were given; except instructions Nos. 11 and 12, heretofore mentioned concerning the validity of the search warrant. None of the other instructions told the jury that unless they believed beyond a reasonable doubt that defendant's possession of the mash was for the purpose of making intoxicating liquors they should find defendant not guilty. One instruction told them it was no offense for one to have non-intoxicating grape juice in his possession; but this instruction did not cover the vital point at issue. The grape juice, if the defendant intended to make such from the mash, had not been made. Defendant admitted possession of the grapes and water in the barrel, but contended, supported by the evidence of his witnesses, that the intention was to make grape juice therefrom; while on the other hand the whole burden of the State's evidence was to show that his intention was to make intoxicating liquors therefrom. The possession of the boiler, with a cap and worm within easy access, and the actual finding of moonshine liquor secreted near by was intended to accentuate and establish the charge that the mash was to be used for an unlawful purpose. On this vital issue no instruction had been offered or given. It appears from one of the bills of exception that in closing the argument for the

State the prosecuting attorney read the statute, and defendant's counsel called the attention of the court to the fact that the prosecuting attorney had not read all of the statute, but had left out that portion which said that the mash must be for the purpose of making intoxicating liquors; thereupon the prosecuting attorney asserted that he *had* read all of the statute; and objected to the court giving such instruction on the further ground that the request came too late, the argument having been closed. The court refused to further instruct the jury. Was this error? It will be observed from inspection of Section 37, Chap. 32-A, of the Code, that the portion thereof which deals with the possession of what is known as "mash", the purposes for which "mash" is had which make its possession unlawful, and the penalty for such possession, is contained in two paragraphs; the first paragraph makes it unlawful for any one to have such mixture in his possession for the purpose of making intoxicating liquors; while the other paragraph says that any person who has such mixture on his premises or under his control, etc. shall be guilty of a misdemeanor and fixes the punishment, leaving out the qualifying words as to the purpose of the possession. To read the second paragraph alone, it is unlawful to have in possession any quantity of mash without regard to the purpose; but when the two paragraphs are read together they must be construed to mean that the possession of the mash must be for the purpose of making intoxicating liquors. Even if the prosecuting attorney read the two paragraphs the jury might have been confused as to the true meaning and construction to be placed on that statute. Many persons with legal training, and some of our inferior courts have taken the position under this statute that the possession of "mash" for whatever purpose invokes the penalty on the possessor. It is the province of the court to instruct the jury on the law of the case; and the reading of the statute in the closing argument was in effect, placing this inaptly drawn statute before them for their interpretation. Instructions, of course, under our statute, should be given by the court in writing. When this controversy arose, the defendant's counsel insisting that the jury should be told that the possession of the "mash" alone was not sufficient to convict unless they found its pos-

session was for the purpose of making intoxicating liquors, and the prosecuting attorney objecting to such instruction, the jury might well have come to the conclusion that the intent of the possession was of no consequence and had no bearing, because the court refused to so instruct them. The vital and controlling question in the case was then at issue, and we are of the opinion that any confusion arising thereon should have been promptly cleared by a proper instruction either oral or written; oral, if not objected to, and written if either side required. *State ex. rel. Pierce* v. *Williams,* 95 W. Va. 218, 120 S. E. 594. A person charged with crime is entitled to a fair and impartial trial which includes a correct interpretation of the law governing the questions arising therein; and perceiving that the jury might have been misled as to the true meaning and interpretation of the statute, we have concluded to reverse the judgment for this error. Of the guilt or innocence of the accused we are not concerned. He should be given every safeguard accorded by the law.

Judgment is reversed; verdict set aside, and a new trial awarded.

*Reversed; verdict set aside; new trial.*