## CHARLESTON.

MARGARET MORRIS, *By Her Next Friend, Etc., v.* THE BALTIMORE & OHIO RAILROAD COMPANY *et al.*

(No. 6405)

Submitted March 5, 1929.    Decided March 26, 1929.

*P. J. Crogan* and *Kilmer & Byrer,* for plaintiff in error.
*F. E. Parrack,* for defendant in error.

LITZ, JUDGE:

The plaintiff, Margaret Morris, obtained a verdict and judgment of $25,000 against the defendant, Baltimore & Ohio

Railroad Company, for personal injuries sustained by her in a collision between a Ford coupe automobile, which she was driving, and an empty backing passenger train of the defendant.

The accident occurred on a public crossing in Preston county about ten o'clock at night while the plaintiff, accompanied by her father, William Morris, was traveling from her home to a school house where she was teaching for a football belonging to one of her pupils. The automobile was moving about ten miles an hour and the train from fifteen to twenty miles an hour at the time of the collision. The father lost his life, and the daughter, who was nineteen years of age, suffered serious injury. The circumstances of the collision are fully stated in our recent decision affirming a judgment of $10,000 for the death of William Morris. *Gertrude Morris, Administratrix of the estate of William Morris* v. *Baltimore & Ohio Railroad Company,* 107 W. Va. 97.

The declaration charges, substantially, that the train was negligently operated over the crossing without warning to the plaintiff. She contends that the night was dark and foggy; that the train was but dimly lighted; and that no warning of its approach was given. The defendant denies negligence on its part, and insists that the accident was due to her negligence. The evidence does not differ materially from that in the former case. The following points of difference, however, may be noted: (1) Witnesses for the defendant fix the distance of the train from the crossing before the brakes were applied as 35 feet in the first case and 75 feet in this case. (2) These same witnesses testified in the former case that the air whistle on the rear of the coach was blown constantly as the train approached the crossing and in this case they say it was blown intermittently "or now and then". (3) The plaintiff testifies more positively in this than in the other case that she was observant in approaching the crossing.

The assignments of error, not involved in the William Morris case, relate to the admission of evidence on behalf of the plaintiff; the refusal of instructions Nos. 11, 15, 17 and 18, requested by the defendant; and the quantum of damages found by the jury.

George W. Watkins, engineer of the train, who was introduced as a witness for the defendant, on cross-examination stated that the rules of the defendant did not permit him to blow the whistle for the crossing on the occasion of the accident except to give the usual crossing signal, which is two long and two short blasts. Whereupon, after this witness had admitted that the train was running against the current of traffic, the court permitted, over the objection of the defendant, the introduction of its rule 21 "in so far as it relates to the required action of the engineer in backing up toward a crossing", as follows: "Approaching highway crossing at grade, after the warning whistle is given at the designated post when the view from or to the highway is obstructed, or the engineman or other employee on the engine can see a pedestrian or vehicle approaching the crossing, warning whistle should be followed by short blasts given at intervals until the engine has reached the crossing. Whenever a train or engine is approaching a crossing at the time another train in the same or opposite direction is standing upon, passing over, or has just passed over the crossing, the engineman on the approaching train or engine shall sound blasts of the whistle at intervals until the engine has passed over crossing. When trains are running against the current of traffic the engineman will sound the crossing whistle signal at the designated post governing trains running with the current of traffic, followed by short blasts of the whistle at intervals until the crossing is reached, even though the highway may be protected." Whether this rule would have been proper as independent evidence, it was certainly admissible for the purpose of contradicting the witness.

The plaintiff adduced direct evidence of fog at the time of the collision, and also indirect evidence thereof (to which the defendant objects) by showing its existence a brief while before and after the accident. The evidence complained of was proper as tending to corroborate the first class of testimony.

The evidence of the witness, Guy Shaffer, that he observed no one on the rear of the train when it passed him two or three minutes before the accident was properly admitted for

the purpose of contradicting the testimony of the servants of the defendant who stated that they had been on the lookout from the rear of the train from the beginning of the backward movement until the crossing was reached. The objection to the evidence of the same witness that the "marker" lights on the rear coach indicated that the train was moving forward is also without merit.

The evidence of the eye specialist, who operated on the plaintiff's eye as the result of the accident which destroyed the sight thereof, that it may become necessary to remove the eye was properly admitted to show the extent of the injury and its probable consequences.

Instruction No. 11, requested by the defendant, and directing a verdict in its favor, was properly refused. It was decided in the William Morris case that the issues of negligence by the defendant and contributory negligence on the part of the decedent were questions for jury determination. In view of this holding, and considering the youth of the plaintiff, the experience of the father, who was fifty-one years of age, and the fact that he was in a better position than she to observe the approach of the train, we do not think she should be adjudged guilty of contributory negligence as a matter of law.

Instruction No. 15, requested by the defendant, would have told the jury that a railroad company "has the right to run its trains backward as well as forward on any of its tracks and in the nighttime as well as in the daytime." This instruction is abstract, and, without qualifying language defining the duty of the defendant under the circumstances of the case, was calculated to mislead the jury.

Instruction No. 17, requested by the defendant, is to the effect that the train was not being run at an unlawful rate of speed. This instruction was also improper, for, as stated by Judge Hatcher in the opinion of the William Morris case, the question of whether a train causing injury to a traveler at a public crossing is being operated at a lawful or unlawful rate of speed depends upon the circumstances of the particular case.

Instruction No. 18, requested by the defendant, would have

advised the jury that the defendant was not guilty of negligence in failing to stop the train "after the plaintiff passed the Wolfe store and before she reached the crossing, for the reason that the evidence discloses the fact that it was not possible for the train to have been so stopped." This instruction evidently offered for the purpose of excluding from the consideration of the jury the doctrine of the last clear chance, would not, actually, have done so. The fact that the train could not have been stopped after the automobile had passed the Wolfe store (about fifty feet from the crossing) would not necessarily determine the question as to whether or not it could have been stopped in time to avoid the accident after the peril of the plaintiff had been or should have been discovered by the servants of the defendant. George Mitchell, conductor of the train, testified that he observed the approach of the automobile a considerable distance from the crossing, but "thought maybe it was going to stop" as it appeared to him to be reducing speed. So, the defendant could not have been benefited by the instruction and was, therefore, not prejudiced by its refusal.

The contention of the defendant that the verdict is excessive treats the injuries of the plaintiff, other than the loss of an eye, as entirely superficial and worthy of but slight, if any, consideration in fixing the damages. The plaintiff was not only bruised, lacerated and disfigured about the eye, face and head but her lips, legs and one of her hands also were seriously injured and disfigured. She was also a patient in the hospital for six weeks and has endured much suffering. "The amount of damages found by a jury in an action for personal injuries will not be disturbed unless it is unsupported by the evidence or is so large as to indicate that the jury was prejudiced." *Truschel* v. *The Rex Amusement Company*, 102 W. Va. 215. A judgment for $18,000 was affirmed in that case for an injury to the plaintiff's ankle sustained by falling on a stairway in a theatre. In an action for personal injuries, the amount of damage recoverable is generally left to the discretion of the jury, "and the only limitation which the law imposes is that such damage be fairly compensatory and not such as to show partiality, prejudice or misconduct

on their part.'' *Bowling* v. *Guyan Lumber Company*, 105 W. Va. 309; *Looney* v. *Norfolk & Western Railway Company*, 102 W. Va. 40. Affirming a judgment for $53,750.00 for the death of a locomotive engineer, in the latter case, this Court stated: ''Can we properly say, in the absence of any other elements affecting plaintiff's right, that the verdict was influenced by bias, prejudice, partiality, or corruption on the part of the jury, or was it based on some wrong theory or in violation of some rule of law? Unless we can so find from the record, our decisions and many others say we should not invade the province of the jury in their right to fix the amount of such indeterminate damages. Among these are: *Normile* v. *Wheeling Tract. Co.*, 57 W. Va. 132; *Gibbard* v. *Evans*, 87 W. Va. 650; *Corrick* v. *Western Md. Ry. Co.*, 79 W. Va. 592, 91 S. E. 458; *Holt* v. *Otis Elevator Co.*, 78 W. Va. 785, 90 S. E. 334, (Syl. 5).''

In view of the seriousness and permanency of the plaintiff's injuries, we cannot say that the verdict is so excessive as to evince corruption, prejudice or partiality on the part of the jury. The judgment is, therefore, affirmed.

*Affirmed.*