KATHLEEN RAINES, *etc.*

*v.*

P. O. FAULKNER

(No. 9936)

Submitted September 23, 1947.  Decided October 21, 1947.

HAYMOND, and Fox, JUDGES, dissenting.

*R. Jacob Schleuss, J. O. Henson* and *Harry H. Byrer,* for plaintiff in error.

*Martin & Seibert* and *Clarence E. Martin, Jr.,* for defendant in error.

LOVINS, JUDGE:

A writ of error and supersedeas was granted defendant to a judgment of the Circuit Court of Berkeley County, in favor of plaintiff in the sum of five thousand dollars, rendered upon a verdict for that amount.

Plaintiff, aged twenty, who sued by her next friend, filed her declaration in an action of trespass on the case against defendant containing allegations which would support an action for simple assault and battery. Upon motion of defendant, plaintiff was required to, and did, file a bill of particulars, stating that the trespass out of which the cause of action arose took place on the morning of August 16, 1945, in defendant's law offices located on the second floor of the Wiltshire Building, on the public square in Martinsburg. Thereafter, at the request of plaintiff, the declaration was amended so as to allege: "* * * That the said defendant did, * * * with force and arms, wilfully, wantonly, unjustifiably, recklessly and maliciously assault the said plaintiff * * *, by means thereof the said plaintiff, then and there greatly became and was hurt, bruised and wounded, and became and was sick, sore, lame and disordered, and so remained and continued for a long space of time during all of which time the plaintiff thereby suffered and underwent great pain, and was hindered from performing her necessary affairs and business, and thereby the plaintiff was forced and obliged to, and did necessarily pay, lay out and expend large sums of money, in and about the matter of endeavoring to be cured of said bruises, wounds, sickness, lameness and disorder, * * *."

The assault and battery complained of occurred in the following manner:

About eleven o'clock on the morning of August 16, 1945, that day being a holiday occasioned by the victory of this country in its war with Japan, plaintiff went to the offices of defendant. Her announced purpose for going to the offices was to obtain information regarding the status of a divorce proceeding involving Lewis Campbell, a young man with whom plaintiff had been keeping company, which proceeding, she had been informed, was being attended to by a lawyer named "Faulkner".

Defendant's offices consisted of two rooms situate on the east side of the second floor of the building. Each of the offices had a door opening on a hallway, and there was a communicating door between them. Across the hallway were the offices of Dr. Kearfoot, being the only other offices on the second floor of the building. Entrance to the offices on the second floor of the building was through a stairway at the bottom of which was a door opening on the street, and on which defendant's name appeared. Adjoining this door was another door, giving entrance to the law offices of Whiting Faulkner.

Plaintiff states that she did not know which Faulkner she was supposed to see with reference to the advice she sought, and upon arrival at the building, mistakenly went to the offices of defendant, having later ascertained that Whiting Faulkner was the attorney whose advice she intended to seek.

She was met at the door at the head of the stairway by defendant who escorted her into the rear office. She testified that after she had stated her business to him, and there had been some discussion between them relating thereto, defendant came from behind his desk to the place where she was seated and thereupon "* * * jerked my head and kissed me and he felt my breast—he rubbed his hand over my breast. Then, he ran his hands up my legs from my knees to my hips". Immediately following this occurrence plaintiff left defendant's offices, descended to the street, and crossed the same, where she met Alma Snyder, secretary to Whiting Faulkner. After talking

with Miss Snyder, she went to the police station and requested the police to find Lewis Campbell.

When Campbell was found, he came to the courthouse where he and plaintiff discussed the assault. Thereupon Campbell went to defendant's offices, where, according to his testimony, defendant offered to pay him, Campbell, to stop the plaintiff from seeing the prosecuting attorney and obtaining a warrant "for the way he [defendant] had treated her."

Plaintiff states that as a result of the assault her legs were scratched; that she had a stiff neck for a week; that she expended two dollars fifty cents for a doctor's bill in treating her neck; and that she lost two days' work. The loss of work occasioned loss of wages amounting to sixteen dollars eighty cents.

Defendant's testimony, relating to the occurrence, is a direct contradiction to all the pertinent testimony of plaintiff. He states that he interviewed plaintiff in the front office of his suite, and that the purpose of her visit was to institute legal proceedings to recover moneys she had lent Campbell. He does state that she was upset, and, on two occasions, she began crying while discussing the matter with him. He denies having had any physical contact with plaintiff; having spoken any improper words to her; or having made any improper advances toward her.

Defendant is corroborated by the testimony of Mrs. Virginia Nicely, another client, who states that she was seated in the rear office of defendant's suite, and that the inter-office door was partially ajar. She further testifies that she was able to see defendant, though not plaintiff, during the entire conversation, and, although she could not hear the conversation, the appearances thereof would not indicate anything unusual.

Defendant is further corroborated by the testimony of the secretary to Dr. Kearfoot, who states that she momentarily entered the front office of defendant's suite

while he was talking to plaintiff, and thereafter remained in the Kearfoot offices paying particular attention to the occurrences in defendant's offices, the door to which was open.

At the conclusion of the evidence, the plaintiff submitted her instructions numbered 1 and 2. No objections were made by defendant to plaintiff's instruction No. 1, but defendant did object to plaintiff's instruction No. 2, assigning as the reason therefore: "* * * because it introduces into this case the question of punitive damages. There is no evidence of malice in this case * * *." In so far as it relates to defendant's objection, plaintiff's instruction No. 2 was as follows: "* * * your second inquiry, then, if you find compensatory damages, against the defendant, may be, whether, under the evidence, this is a case in which exemplary or punitive damages are proper to be allowed the plaintiff, that is, was the act of the defendant wilful, wanton, unjustifiable, or reckless, or done with such malice as implied a spirit of mischief, or criminal indifference to civil obligations affecting the rights of others * * * but you are further instructed by the Court that the plaintiff is not entitled to punitive or exemplary damages as a matter of right, and that the awarding or not awarding thereof is a matter wholly within your discretion. * * *"

Having given plaintiff's instruction No. 2, the court refused defendant's instruction No. 4, the effect of which would have denied the jury the right to return a verdict for any sum by way of punitive damages.

Defendant tendered his instruction No. 6, which would have required the jury to state any amount they found by way of punitive damages "separately from any amount [found] as compensation."

The court refused defendant's instruction No. 6, being of opinion that it was not in accord .with Code, 56-6-5. Having requested defendant to draw up an instruction which would comply with that statute, which request defendant refused, the court gave to the jury an instruc-

tion designated "Court's Instruction Given at Defendant's Request". No objection was made or exception taken to that instruction, which was as follows: "The Court instructs the jury that if they should return a verdict in favor of the plaintiff in this case, the verdict should show the total amount of damages that the jury finds that the plaintiff is entitled to recover. Having found such general verdict for the plaintiff, the jury is directed to then render separate verdicts (1) stating the amount found by them as damages by way of compensation to the plaintiff and (2) stating the amount, if any, found by the jury as punitive damages."

The only other instruction offered by defendant and refused by the court was defendant's instruction No. 3, which would have restricted the damages to be found by the jury to "* * * a nominal amount, for the reason that the plaintiff has failed to produce any evidence that she suffered any material injury or damage * * *."

The jury retired to its room to consider of its verdict, and, after a time, returned with a general verdict for plaintiff in the amount of five thousand dollars, but did not separate the compensatory damages from punitive damages, in accordance with "Court's Instruction Given at Defendant's Request."

Thereupon the court instructed the jury to return to its room and separate the general verdict, after which the foreman of the jury advised the court that the jury was "* * * having trouble distinguishing between compensatory and punitive damages. * * *." Plaintiff instruction No. 2 was then read again to the jury. But the jury advised the court that they still did not understand the distinction. The court then announced its intention to explain verbally to the jury the distinction between punitive and compensatory damages, to which defendant's counsel objected. The court offered to permit counsel to draw an instruction along the lines of his announced intention, which counsel refused to do. Thereupon the court verbally instructed the jury with reference to the distinction

between compensatory and punitive damages, adding: "* * * The punitive damages, if you do allow punitive damages, should have some relation to the amount of actual damages you allow." The record does not disclose that any further objection or exception was made to the court's verbal instruction to the jury.

After further consideration the jury, in addition to its general verdict, returned the following:

"We the jury do render the following separate verdicts:

"First, we find for the plaintiff in the sum of $3,000.00 compensatory damages, and,

"Second, we find for the plaintiff the sum of $2,000.00, which, together with the compensatory damages, are allowed as punitive damages."

Motions in arrest of judgment, to set aside the verdict and grant a new trial were overruled; and the court rendered judgment on the verdict.

Defendant makes ten assignments of error, which raise the following questions: (1) Is the verdict of the jury, in so far as it constitutes a finding of liability on the part of the defendant, sufficiently supported by proof; (2) do the pleadings and proof support a finding of punitive damages; (3) are the damages pleaded sufficient to support the introduction of evidence relating to, and a verdict including, damages for humiliation, shame, dishonor, terror, mental pain and anguish; (4) is the jury's finding of punitive damages excessive; (5) is the jury's finding of compensatory damages excessive; and (6) does the trial court's oral instruction to the jury constitute reversible error?

If an affirmative answer be made with respect to the proof as it relates to the second question, discussion thereof should include a discussion of, and be predicated upon, an affirmative answer to the first question. "A finding of compensatory damages is a necessary predicate for an award of punitive damages. *Newman* v. *Robson & Prichard,* 86 W. Va. 681, 104 S. E. 127; 1 Sedgwick on

Damages, Ninth Ed. 708; 2 Sutherland on Damages, 4th Ed., Section 406; 33 A. L. R., page 285, note; 81 A. L. R. page 913, note; 25 C. J. S., Damages, Section 118n." *Toler* v. *Cassinelli,* 129 W. Va. 591, 41 S. E. 2d 672, 679. See *Ennis* v. *Brawley,* 129 W. Va. 621, 41 S. E. 2d 680. Therefore, we will discuss the second question, in so far as it relates to proof, jointly with the first question.

In support of the allegations of her declaration, plaintiff testified fully, and somewhat in detail, as to what took place while she was in defendant's offices. Plaintiff's version as to these occurrences is partially corroborated by the testimony of Alma Snyder, Lewis Campbell, and two policemen. On the other hand, defendant's testimony constitutes a direct contradiction of every material statement made by plaintiff, even with respect to the particular office of his suite which plaintiff and defendant occupied at the time. His version, in the main, is corroborated by Mrs. Nicely and Dr. Kearfoot's secretary. If plaintiff's version is true, as the jury by its verdict found, then certainly there can be no doubt that defendant's assault upon her was wilfully committed with such reckless, wanton and criminal indifference and disregard of plaintiff's rights that the jury could infer malice therefrom, as a basis for allowing punitive damages. See *Peck* v. *Bez,* 129 W. Va. 247, 40 S. E. 2d 19; and *Pendleton* v. *Railway Co.,* 82 W. Va. 270, 95 S. E. 941; 16 A. L. R. 761. The assault, as she relates it, was without provocation, and was not directly or indirectly invited by word or act on her part. Defendant's evidence was simply to the effect that no assault, malicious or otherwise, occurred.

But defendant argues that the verdict is against the clear preponderance of the evidence, basing his argument on the proposition that the evidence, on which the verdict is predicated, is incredible. In support of such argument defendant cites *Ramey* v. *Ramey,* (Va.) 25 S. E. 2d 264. This Court has adopted the same principle, saying: " 'Courts are not required to believe that which is contrary to human experience and the laws of nature, or which they judicially know to be incredible * * *.' *Owen*

v. *Appalachian Power Co.*, 78 W. Va. 596, 610, 89 S. E. 262, 268." *Acree* v. *Pipe Line Co.*, 122 W. Va. 242, 246, 8 S. E. 2d 186. See *Marshall* v. *Conrad, Admr.*, 118 W. Va. 321, 327, 191 S. E. 553. Defendant, in effect, argues that it is contrary to human experience and the laws of nature for an assault, such as described by plaintiff, to have taken place within the plain view of Mrs. Nicely and Dr. Kearfoot's secretary without those witnesses' knowledge.

Such argument begs the question and assumes that the testimony of defendant's corroborating witnesses is true, notwithstanding there is substantial evidence tending to show that they were not present.

Plaintiff testified that no one else was present on the second floor of the building at the time of the assault; that the assault took place in the back room of defendant's offices; and that no one else was present in that room, even though Mrs. Nicely states that she was seated alone therein, and that the discussion between plaintiff and defendant took place in the front room. Furthermore, both Mrs. Nicely and Dr. Kearfoot's secretary state that nothing unusual took place, while defendant himself testified that plaintiff "wept briefly twice" during the course of their conversation. One of defendant's witnesses testified that she left the building within five or ten minutes of the time that plaintiff departed; but Miss Snyder testified that she watched defendant's doorway for ten or fifteen minutes after plaintiff's emergence from the building, and the only person who came therefrom was defendant, who then "appeared very nervous". Campbell also stated that he attempted to keep a dental appointment with Dr. Kearfoot earlier in the day, but had found no one in the doctor's offices, on the door of which was a note to the effect that the offices would be closed for the following two days.

Plaintiff's version of the assault is not incredible because she failed to tell Miss Snyder or the police of the occurrence immediately following, as defendant argues. Miss Snyder does state that when she encountered plaintiff, she

"* * * appeared very nervous. I didn't know what was the matter until she told me. * * *". Exactly what plaintiff did tell Miss Snyder does not appear, but explicitly it related to plaintiff's nervousness, and it could be reasonably inferred that Miss Snyder's testimony meant that plaintiff informed her of the assault. Nevertheless, we do not think it incredible that a young woman would fail to inform strangers of an assault upon her of the nature here involved, immediately following the act and before she had had an opportunity to discuss the same with members of her family or intimate acquaintances.

Plaintiff's version of the occurrence was not incredible within the meaning of the principle announced in the *Acree* and *Owen* cases, and accordingly we hold that the jury being confronted with contradictory statements, neither of which was incredible, was entitled to resolve the issue so made. The verdict, determining that issue in favor of plaintiff, is not contrary to the clear preponderance of the evidence, and must be sustained as to the question of defendant's liability. See *Denoff* v. *Fama*, 102 W. Va. 494, 135 S. E. 578.

The amended declaration alleges that defendant assaulted plaintiff "* * * wilfully, wantonly, unjustifiably, recklessly, and maliciously * * *". That such a pleading supported by proof is sufficient to uphold a verdict including punitive damages, is well settled. See *Peck* v. *Bez, supra; O'Brien* v. *Snodgrass*, 123 W. Va. 483, 16 S. E. 2d 621.

From the foregoing it necessarily follows that the refusal of defendant's instruction No. 4 was not error. Nor does the giving of plaintiff's instruction No. 2 constitute reversible error. The specific ground of objection made to such instruction was that no malice had been shown. We have disposed of the question raised by such objection, and do not consider the other objections to plaintiff's instruction No. 2 now urged. Rule VI (e), Rules of Practice and Procedure for Trial Courts, 116 W. Va. lxiii; *Slater* v. *Gas Co.*, 126 W. Va. 127, 27 S. E. 2d 436.

In discussing the third question, it is to be noted that plaintiff's declaration contains only general allegations of

damages. Defendant contends that damages for humiliation, shame, dishonor, terror, mental pain and anguish must be pleaded specially. The general rule, well established in this jurisdiction, with reference thereto is that damages which necessarily flow from the act or omission complained of may be pleaded generally, while damages which are not the necessary results, even though they may be the natural and proximate consequences of the act or omission complained of, must be pleaded specially. See *Morrison* v. *Allen,* 106 W. Va. 224, 227, 145 S. E. 277; *Pegram* v. *Stortz,* 31 W. Va. 220, 340, 6 S. E. 485. Applying that rule to the case at bar, we are of the opinion that humiliation, shame, dishonor, terror, mental pain and anguish to plaintiff would naturally and necessarily flow from defendant's assault upon plaintiff. This Court has so held in *Beck* v. *Thompson,* 31 W. Va. 459, 7 S. E. 447, which, like the case at bar, was an action of trespass for an assault and battery. Therein it was stated: "* * * in considering the *quantum* of damages the jury have a right to consider not only the physical injury and physical suffering, and expenses and loss of time and wages, but also the mental anguish, shame, and dishonor suffered by the injured party". See *Riddle* v. *McGinnis,* 22 W. Va. 253, 281. Although the allegations of the declaration respecting damages is not set forth in the opinion in the case of *Beck* v. *Thompson, supra,* we have inspected the original record of that case, and it is interesting to note that the allegations therein are substantially the same as those respecting damages contained in the declarations in the case at bar. Therefore, the trial court did not err in its rulings relative to the third question stated above.

The fourth and fifth questions are to be discussed jointly, because the question of excessiveness of punitive damages is directly related to and dependent upon the amount allowed by the jury for compensatory damages.

Punitive damages may be awarded only if compensatory damages are inadequate to punish the defendant. *Hess* v. *Marinari,* 81 W. Va. 500, 94 S. E. 968. See *Claiborne* v. *Railway Company,* 46 W. Va. 363, 33 S. E. 262, and *Allen*

v. *Lopinsky*, 81 W. Va. 13, 94 S. E. 369. "Ordinarily, the jury are the judges as to what will be an adequate punishment in a case where it is found that punitive damages may be allowed * * *." *Hess* v. *Marinari*, 81 W. Va. 500, 507, 94 S. E. 968. See *Fink* v. *Thomas*, 66 W. Va. 487, 66 S. E. 650. But the court will control the actions of the jury in this respect by requiring that "* * * damages awarded by way of punishment * * * bear a reasonable proportion to compensatory damages so found." *Toler* v. *Cassinelli, supra; Ennis* v. *Brawley, supra*. See *Pennington* v. *Gillaspie*, 66 W. Va. 643, 658, *et seq.*, 66 S. E. 1009.

This gives rise to the question whether punitive damages amounting to two thousand dollars bears a reasonable proportion to the compensatory damages amounting to three thousand dollars. Suffice it to say that, if the compensatory damages are not excessive, we are of the opinion that the punitive damages do not bear an unreasonable proportion thereto.

It is worthy of note that the court's oral instruction to the jury, which will be more fully discussed hereinafter, was erroneous in that it stated that punitive damages should have "some relation" to the compensatory damages allowed. It is obvious that this does not meet the test prescribed by the *Toler, Ennis* and *Pennington* cases cited above. But since no objection was made in this respect, and it is clear from the verdict that no prejudice resulted therefrom, we merely call the attention of the parties and the trial court thereto.

But defendant argues that under the evidence the compensatory damages are excessive. Plaintiff expended two dollars and fifty cents for medical services, and she lost wages amounting to sixteen dollars and eighty cents, as hereinbefore stated. Her physical damages were slight, consisting of physical pain induced by the assault, a stiff neck and some scratches on her leg. The pain attending the stiff neck must not have been severe, for it incapacitated her from employment for only two days, and the actual stiffness lasted but one week. The scratches on her

legs must have been inconsequential, for when she sought medical advice relative to her stiff neck, which, presumptively, was during the period in which her neck was stiff, no evidence of the scratches remained. Therefore, we are of the opinion that the trial court, in its written opinion overruling defendant's motion to set aside the verdict, correctly appraised the verdict of the jury in stating: "* * * The balance of the $3,000.00 allowed for actual or compensatory damages must have been the jury's evaluation of the plaintiff's terror, mental anguish and humiliation." In other words, except for the sum of nineteen dollars and thirty cents, the verdict for compensatory damages was of an indeterminable nature, the greatest portion of which must have represented damages for terror, mental anguish and humiliation.

"Where the case is one of indeterminate damages, and the law gives no specific rule of compensation, the decision of the jury upon the amount of damages is generally conclusive unless the amount is so large or small as to induce the belief that the jury was influenced by passion, partiality, corruption or prejudice, or misled by some mistaken view of the case; but, if so excessive as to induce such belief, it will be set aside." *Trice* v. *Chesapeake & O. Ry. Co.*, 40 W. Va. 271, 21 S. E. 1022. See *Looney* v. *Railway Co.*, 102 W. Va. 40, 135 S. E. 262, 48 A. L. R. 806; *Landau* v. *Farr*, 104 W. Va. 445, 140 S. E. 141; and *Collins* v. *Skaggs*, 110 W. Va. 518, 159 S. E. 515. Since virtually all of the damages are of an indeterminate nature, we are guided by the principle set forth in the *Trice* case.

If the record indicated that the verdict were based solely, or even to a large extent, upon plaintiff's physical damages, the size of the verdict would induce us to believe that the jury was influenced by passion, partiality, corruption or prejudice. But, as is stated above, it appears that the greatest portion of the verdict constituted damages for terror, mental anguish and humiliation. On the other hand, when we view this verdict in that light, we are led to the conclusion that the jury was influenced by a mistaken view of the case. In other words to justify a

verdict of three thousand dollars for compensatory damages, based almost entirely on terror, mental anguish and humiliation, the jury must have concluded that plaintiff's terror, mental anguish and humiliation were very extensive and of considerable duration. The evidence does not support such conclusion. The testimony regarding damages in those respects is as follows:

Plaintiff stated that she "* * * was very nervous and excited", but she makes the statement with reference to her conversation with Miss Snyder immediately following her departure from the place of the assault. She further states that she was crying when she came out of defendant's offices following the assault. Miss Snyder said plaintiff "* * * appeared very nervous * * *" at the time of her conversation with plaintiff. Campbell testified that when he first saw plaintiff following the assault, she was "Crying and nervous and practically she couldn't hardly speak. She could hardly talk at all. * * * She was a wreck, nervous and all upset * * *." The two policemen to whom plaintiff talked at the police station immediately following the assualt testified that she was very nervous and was crying at that time.

No other testimony was offered regarding her actions or condition, from which a jury could infer that she was in a state of terror, mental anguish and humiliation. No proof was offered indicating that these conditions existed beyond a few hours following the assault, unless it can be inferred that they contributed to her inability to work for two days thereafter. However, as to such inference, it is noted that she testified, regarding her loss of wages, with reference to her stiff neck, and not with reference to her condition of nervousness and excitement.

Therefore, we must conclude that the jury was not warranted under the proof, in believing that plaintiff's terror, mental anguish or humiliation was extensive and of considerable duration.

Inasmuch as this case must be reversed because of the excessiveness of the compensatory damages, it is unnec-

essary to pass upon the question raised by the trial court's oral instruction to the jury relative to the written interrogatories submitted to the jury. But since the case is to be remanded for the purpose of a new trial, we deem it advisable to comment upon the power of the trial court to give an oral instruction.

Code, 56-6-19, provides: "* * * The court may, on its own motion, whether requested or not, *in writing* define to the jury the issues involved and instruct them on the law governing the case, *but all such instructions shall first be submitted to counsel on each side with opportunity to object thereto. * * *"*. (Emphasis supplied.) Code, 56-6-22, provides: "Nothing in the three next preceding sections contained shall affect the power of the court * * * on its own motion to instruct the jury *in writing* on the law of the case at any stage during the trial, subject to the right of exception by either party."* (Emphasis supplied.) This Court has held that it is error to give, over objections, an oral instruction touching upon material matters in issue. *State* v. *Murphy,* 93 W. Va. 477, 117 S. E. 147. Moreover, such error is ground for reversal, even though the instruction be correct as a matter of law; and its prejudicial effect is not cured by a reporter taking down the instruction in shorthand and thereafter transcribing it into longhand. *Henderson* v. *Kessel, et als.* 93 W. Va. 60, 116 S. E. 68. See *State* v. *Willey,* 97 W. Va. 253, 261, 125 S. E. 83; and *State* v. *Clark,* 64 W. Va. 625, 644, 63 S. E. 402.

The above-mentioned decisions of this Court are the sources of an annotation contained in 115 A. L. R. 1332-1356, which collates the decisions from all jurisdictions of this country. In that annotation the law of this State is characterized as being in accord with the weight of authority that "* * * a violation of the * * * [statute relating to written instructions] * * * constitutes per se reversible error, without the necessity of a finding that prejudice resulted therefrom. * * *". At least as far as the language and effect of the above-mentioned cases are concerned, this characterization is correct. However, other decisions

of this Court have established well defined exceptions to the applicability of this principle, as it relates to Code, 56-6-19 and 22.

In *State* v. *Buford Williams*, 95 W. Va. 218, 120 S. E. 594, it was held that where both parties "* * * unite in asking the court to orally charge the jury * * * neither party can complain in the appellate court that the charge was not in writing and therefore erroneous." See *State* v. *Patko*, 97 W. Va. 298, 306, 125 S. E. 95. This Court reasoned in the *Williams* case that the complaining party had waived his right to have the instruction put in writing, and could not rely upon error which he induced at the trial.

In the case at bar, defendant did object to the trial court's intention to orally. instruct the jury, but at the same time he refused to submit a written instruction as requested by the trial court. Furthermore, he indirectly induced the giving of the oral instruction because it was explanatory of ·the instruction given to the jury in lieu of defendant's instruction No. 6. We are unable to find authority in this jurisdiction for the proposition that this Court will refuse to consider error, indirectly induced by the complaining party, but it is the opinion of some of the members of this Court that the peculiar facts of this case warrant such holding.

Furthermore, in *State* v. *Skinner*, 101 W. Va. 632, 133 S. E. 371, it was held that oral answers by the trial court to questions of the jury relative to the punishment attending certain verdicts are not in violation of Code, 56-6-19. Similarly, it has been held that oral answers by the trial court to questions of the jury, asked while considering their verdict, relating "* * * to the number and kinds of verdicts they might find under the indictment and evidence * * *", are not in violation of Code, 56-6-19. *State* v. *Muncey*, 102 W. Va. 462, 135 S. E. 594. In the case at bar, the jury had already found and returned its general verdict on which the judgment complained of was eventually rendered. True, the trial court had not then accepted the general verdict, but the only reason for its refusal was to

require the jury to answer the interrogatories, separating the damages found in the general verdict into findings of compensatory and punitive damages. Only the defendant could benefit by such separation of damages, and, as has been hereinabove pointed out, he suffered no prejudice from the giving of the oral instruction which only informed the jury as to the manner in which the separation should be made.

As indicated above, we make no decision on this question. Nevertheless, because the case must be retried, we have taken this opportunity to caution trial courts on the pitfalls which attend the giving of oral instructions to juries. These are particularly evident when it is a relatively simple matter to comply fully with the provisions of Code, 56-6-19, 22.

By means of a cross-assignment of error, plaintiff has challenged the action of the trial court in refusing the admission of testimony which would have tended to show that defendant had a bad reputation "* * * for assaulting women in his office or laying his hands upon them in public places."

The general rule is that the good character of the defendant is not admissible in a civil case. But there is an exception to that general rule where the nature and basis of the subject matter of a civil case involves proof of criminal intent, such as cases wherein facts giving rise to allowance of punitive damages are alleged and proved. In the latter instances evidence relating to reputation and character which would be admissible in a criminal prosecution, based on the same facts proved, may be admitted in a civil case. *Hess* v. *Marinari,* 81 W. Va. 500, 505, *et seq.,* 94 S. E. 968. See *Horton* v. *Tyree,* 104 W. Va. 238, 139 S. E. 737; and *Skidmore* v. *Insurance Co.,* 126 W. Va. 307, 27 S. E. 2d 845.

Aside from reputation for truth and veracity as a witness, a defendant's general character and reputation may not be put in issue in a criminal case unless predicated upon evidence of good character and reputation in that

regard offered by him. In the case at bar, defendant offered no evidence of his character and reputation. We apply the same rule in that respect to criminal and civil cases. Accordingly, the trial court properly refused the evidence offered by plaintiff.

In accordance with the foregoing, on the sole ground that the compensatory damages are excessive, the judgment of the Circuit Court of Berkeley County is reversed, the verdict of the jury is set aside, and defendant is awarded a new trial.

> *Judgment reversed;*
> *verdict set aside;*
> *new trial awarded.*

HAYMOND, JUDGE, dissenting:

I agree that the statements of law contained in the first two syllabus points are correct and that they apply to the facts as disclosed by the record. I also agree to the expression in the third syllabus point as a correct statement of an abstract rule of law; but I challenge its application to the facts of this case on the question of the amount of compensatory damages. For this reason, and as the judgment of reversal is based solely on that point, I dissent.

The case was fairly tried in the circuit court and this Court has found, upon a careful review, that on all material questions, except the amount of compensatory damages found by the jury, no prejudicial error occurred. The ascertainment of those damages, which are indeterminate in character and amount, is peculiarly the province of the jury, and this Court should rarely disturb its finding. *Yuncke* v. *Welker,* 128 W. Va. 299, 36 S. E. 2d 410. The rule is firmly established in this jurisdiction that when the damages are unliquidated and indeterminate, as here, to warrant the action of the Court in disturbing a verdict of a jury because of the amount awarded, the verdict must evince passion, prejudice, partiality or corruption, upon the part of the jury, or that the jury entertained a mistaken view of the case. *Holt* v. *Otis Elevator Company,* 78 W. Va. 785, 90 S. E. 333, L.R.A. 1917A, 1194;

*Morris* v. *Baltimore & Ohio Railroad Company,* 107 W. Va. 181, 147 S. E. 759; *Floyd* v. *Chesapeake & Ohio Railway Company,* 112 W. Va. 66, 164 S. E. 28. I find no indication that the jury, in fixing the amount of the damages in this case, was influenced by, or its verdict was based upon, any of these elements, conditions, or considerations.

The case is one in which punitive or exemplary damages, under the pleadings and the evidence, were recoverable. The majority opinion concedes this. It finds no fault with the amount of the award of punitive damages of $2,000.00. It does not criticise or condemn that award as not bearing a reasonable proportion to the amount of compensatory damages which the jury ascertained. It vacates the finding of the total damages awarded in the amount of $5,000.00, which embraced the findings of $3,-000.00 compensatory damages and $2,000.00 punitive damages, solely because it entertains the idea that the jury was misled by a mistaken view of the case. In my opinion, and with deference, the majority of this Court, not the trial jury, is the authority that adopts the wrong view. The personal idea of the majority, on the quantum of damages alone, should not supersede that of the jury who saw and heard the witnesses and whose finding was approved by the trial judge. This Court should not set aside a verdict so found simply because its members, if sitting as jurors, would not have been willing to assess an amount of compensatory damages of $3,000.00. See *Vest* v. *Chesapeake & Ohio Railway Company,* 117 W. Va. 457, 187 S. E. 358; *Corrick* v. *Western Maryland Railway Company,* 79 W. Va. 592, 91 S. E. 458.

The majority opinion refers, in some detail, to items of compensatory damages. It mentions in particular the cost of medical services of $2.50 and the loss of wages of $16.80. It also adverts to the physical injuries, characterized as "slight", which consisted of pain from the assault, a stiff neck and some scratches on the plaintiff's leg, and emphasizes that the pain associated with the stiffness in her neck caused a loss of employment of only two days and that the condition of her neck lasted only one week.

These items are, of course, relatively insignificant, and no contention to the contrary is anywhere advanced. The claim of the plaintiff, however, as recognized in the majority opinion, is chiefly for damages for terror, mental anguish and humiliation caused by the assault. By its verdict the jury indicated its belief that the defendant committed the assault in the manner described and testified to by the plaintiff and on that point, upon conflicting evidence, its finding may not be disturbed or ignored. The attack of the defendant, according to the testimony of the plaintiff and other witnesses, excited and upset her, caused her to cry, and made her very nervous. Shock and humiliation naturally follow such an experience, and the extent of the damage which results is difficult to ascertain. The effect which they produce may not be objective and tangible, but subjective and intangible. A woman subjected to an assault of the nature described by the plaintiff may suffer serious and substantial damage without any accompanying discernible physical injury.

The jury saw this young woman and heard her testify. It observed her acts and conduct while she was present at the trial. It was its province, from all the facts and circumstances proved in the case, to determine the extent of the shock and the humiliation which she experienced as a result of the conduct of the defendant, its effect upon her, and its duration, and to fix the amount of the resultant damages which she sustained. In my opinion the evidence and the fair and reasonable inferences which arise from it amply support the jury's award of compensatory damages. From the evidence I can not say that the amount ascertained as compensation was excessive or that in fixing the amount the jury was misled by any mistaken view of the case. Neither am I willing to substitute any personal view of my own, based solely upon a printed record, for that of the jury which observed the witnesses and heard them testify. Accordingly, I would approve the award of compensatory damages, confirm the verdict, and affirm the judgment of the trial court.

I am authorized to say that Judge Fox concurs in this dissent.